|  |  |
|---|---|
|  | The Honorable Benjamin H. Settle |

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ABIDEMI RUFAI<br>a/k/a Sandy Tang,<br>Defendant. | CASE NO. 21 MJ-5101 DWC<br><br>**MOTION FOR REVIEW OF RELEASE ORDER**<br><br>Oral Argument Requested<br><br>Note on Motion Calendar:<br>June 4, 2020 |

## I. INTRODUCTION

On May 14, 2021, FBI agents arrested Abidemi Rufai at John F. Kennedy International Airport as he prepared to board a flight for Lagos, Nigeria. Rufai is charged with wire fraud in a five-count Complaint that alleges Rufai participated in last year's fraud on the Washington Employment Security Department. The Complaint alleges Rufai personally used the stolen identities of over 100 Washington residents to submit fraudulent pandemic assistance claims totaling over $350,000, and also submitted fraudulent unemployment claims to at least ten other states.

On May 21, 2021, Magistrate Judge Ramon Reyes, Jr. of the Eastern District of New York issued an order releasing Rufai on a $300,000 bond co-signed by a family friend with the initials N.E.S. Judge Reyes also imposed additional conditions of release, including that Rufai reside with N.E.S. and her husband and be subject to location monitoring.

Motion for Review of Release Order - 1
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The government seeks review of the release order pursuant to 18 U.S.C. § 3145(c). Rufai presents an extreme risk of nonappearance that cannot be addressed by conditions of release for the following reasons:

- RUFAI attempted to leave the country on May 15—*before* he knew he faced federal felony charges. Now that he faces a lengthy prison sentence, his incentive to leave the country has grown exponentially.

- RUFAI has no ties to the Western District of Washington. His ties to the United States are extremely weak: one of his 15 siblings lives in New York, and he has visited three times since 2017. Rufai has no legal status in this country and no means of earning income here.

- Pretrial Services for the Eastern District of New York did not investigate N.E.S. before the court named her as a surety and directed Rufai to live with her while on pretrial release. The government's investigation revealed that N.E.S.'s husband, who also lives at the residence, was previously convicted of wire fraud for using stolen personal identifying information to commit credit card and bank fraud. In addition, N.E.S. herself was named by her bank as a suspect in an email impersonation and money laundering scheme.

- RUFAI has the financial means and technical expertise to flee. He has substantial financial resources and is prolific user of stolen identities.

- If Rufai escapes, he likely will be gone forever. Extradition from Nigeria is notoriously difficult. That is exacerbated here by the fact that Rufai has close ties to the Nigerian government and serves as a Senior Special Assistant to the Governor of a Nigerian state.

For the reasons discussed herein, neither the $300,000 bond nor any other conditions of release will address the significant flight risk posed by Rufai. Accordingly, this Court should revoke the release order and order Rufai detained pending trial, or in the alternative, pending his transfer to this district.

//
//

Motion for Review of Release Order - 2
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. BACKGROUND

### A. Rufai's Background

Abidemi Rufai is a Nigerian citizen. Aside from the charged offense, he has no ties to the Western District of Washington. His ties to the United States are limited to a brother (one of his 15 siblings) who lives in Jamaica, Queens. Rufai has visited the United States three times since 2017: once in 2017; once in 2020 (when he committed the instant offenses) and once in 2021. Rufai has no legitimate source of income in this country. Further, Rufai has no legal status here: he traveled to the United States on a tourist visa, which was revoked following his arrest. The Department of Homeland Security issued an immigration detainer for Rufai on May 16, 2021.

Rufai's employment activity in his home country is murky. Rufai told Pretrial Services he has been employed for the last twelve years as a realtor at a Nigerian company called Ascon Limited. However, on his 2017 and 2019 visa applications, Rufai said he worked for a different Nigerian company called Payquick Gaming Company. The Pretrial Services Officer reported that when she interviewed Rufai's brother—with whom Rufai had been staying for five weeks—the brother "was only able to verify that the defendant is employed in Nigeria but did not know any details."

Rufai nonetheless has strong social and political ties to Nigeria. He has a wife and two young children, along with 14 siblings, and told Pretrial Services he is close with his family. Rufai serves in the Nigerian government as a Senior Special Assistant to the Governor of Ogun, the Nigerian state adjacent to Lagos. Although Rufai's arrest prompted the Governor to suspend Rufai from his position while he addresses these charges, notably, he was not terminated altogether.

### B. Charges and Evidence Against Abidemi Rufai

The five-count Complaint charges Rufai with wire fraud in connection with last year's massive fraud on the Washington State Employment Security Department (ESD). As has been publicly reported, in April and May 2020, criminals submitted fraudulent

Motion for Review of Release Order - 3
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

claims for unemployment benefits totaling over $650 million using the stolen personal identifying information (PII) of Washington residents.

As detailed in the Complaint, investigators determined that an email account with the address sandytangy58@gmail.com was used to submit over 100 claims to ESD totaling more than $350,000, and was also to submit additional claims for unemployment benefits in ten other states. Further, the investigation developed overwhelming evidence that Rufai is the operator of the sandytangy58@gmail.com email account. For example, the Nigerian phone number used as the recovery phone number on the account is the same phone number Rufai provided when he applied for a U.S. visa. Rufai admitted at the time of his arrest that this is his phone number. Some of the benefits paid out on the fraudulent claims filed by sandytangy58@gmail.com were mailed to Rufai's brother's address in Queens—where Rufai was staying at the time. And, over the period of the fraud, Rufai held a U.S.-based Citibank account that received approximately $288,000 in unexplained deposits.

In addition, the sandytangy58@gmail.com account itself contained numerous links to Rufai. For example, the Google Drive account associated with the email account contained four photographs of Rufai. During Rufai's 2017 visit to the United States, the account was used to make at least three online orders using Rufai's brother's residence (where Rufai was staying) as a billing address. And Google search history associated with the sandytangy58@gmail.com account shows that the user of the account searched for "apply for U.S. visa" on July 7, 2019—the same day Rufai filed his U.S. visa application.

C.  **Rufai's History of Defrauding the United States**

The fraud on ESD is just one of Rufai's most recent fraud schemes. The contents of the sandytangy58@gmail.com account make clear that Rufai has been collecting Americans' PII and using it to commit fraud since at least 2017, when he opened the account and began submitting claims for FEMA disaster relief, followed by fraudulent submissions to the IRS and the Small Business Administration.

Motion for Review of Release Order - 4
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The volume of stolen PII in the sandytangy58@gmail.com account is staggering. It contains over 1,000 stolen tax returns and comprehensive client files of an accounting firm; hundreds of emails exchanging PII and financial information of Americans; images of stolen or counterfeit American identification documents; and dozens of Excel or text files containing caches of PII and other personal and financial information. For example, a single Excel file contains a list of 9,933 marketing and finance directors at different companies, along with their email addresses and other information about these persons. Another file reflects the degree of intrusion Rufai and his associates achieved, listing individuals' standard PII along with passwords to their email accounts, driver's license numbers, multiple security questions and answers, and bank account and routing numbers.

In addition to defrauding the federal government, Rufai also participated in internet scams targeting individuals. For example, the account contains communications between Rufai and others about perpetuating a "mystery shopper" scam, which directs unwitting persons to launder money through payment transfer companies like MoneyGram. *E.g.,* Exhibit A. The account also contains emails from the "mystery shoppers" stating that they received the money orders and instructions. The account also contains a large volume of emails attempting to fraudulently change the direct deposit information for employees by contacting payroll departments with masked email addresses that appear to be sent from a genuine employee. Rufai's email account also contains evidence of his involvement in "romance scams," where fraudsters post fake dating profiles to connect with individuals who then unknowingly launder illicit proceeds for the fraudsters.

### D. Proceedings in the Eastern District of New York

#### 1. Rufai's Arrest and Initial Appearance

The Honorable David W. Christal authorized the Complaint on May 14, 2021. At about 7:45 PM Eastern Time that evening, FBI agents arrested Rufai at John F. Kennedy International Airport, in the Eastern District of New York, as he prepared to fly first-class

Motion for Review of Release Order - 5
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to Lagos, Nigeria. Following the arrest, Rufai consented to an interview, in which he admitted that the phone number connected to the sandtyangy58@gmail.com account was his phone number and admitted that photos found in the email account were indeed photos of Rufai. However, Rufai denied using the sandtyangy58@gmail.com account.

Rufai made his initial appearance in the Eastern District of New York on May 15, 2021. The government moved for detention. Magistrate Judge James R. Cho stated that he was inclined to enter a temporary detention order detaining Rufai pending his initial appearance in this District. However, the defense requested that the matter be set over for a detention hearing, which was later scheduled for May 19, 2021 before Magistrate Judge Ramon Reyes, Jr.

### 2. The First Detention Hearing

In advance of the May 19, 2021 hearing, the government filed a letter with the court outlining the extreme risk of flight posed by Rufai. *See* Ex A to Dkt. 6. At the hearing, defense counsel argued that Rufai should be released to live with his brother in Queens, New York—the same address where the Complaint alleges Rufai committed the charged offense and received some of the fraud proceeds—and suggested that the brother could co-sign a bond. While conceding that the evidence against Rufai was "formidable," the defense argued that the risk of flight could be addressed by the proposed conditions of release. The government argued these conditions were insufficient to mitigate the flight risk.

After hearing from the parties, Magistrate Judge Reyes found that the government had satisfied its burden of establishing that Rufai poses a serious flight risk. However, Judge Reyes found that the risk of flight could be addressed by a $300,000 appearance bond, to be signed by Rufai's brother, an attorney licensed in New York. However, when the Court asked Rufai's brother whether he would co-sign the bond, Rufai's brother refused to do so. The Court provided a recess to allow the defense to discuss the issue with the brother. The Court also explained to Rufai's brother that he would not be required to post any collateral, and that he would be responsible for paying the $300,000

Motion for Review of Release Order - 6
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*only if Rufai failed to appear*. However, Rufai's brother was still unwilling to sign the bond, even on those conditions. Noting that the bond was an essential condition of release, Judge Reyes ordered Rufai detained pending his transfer to the Western District of Washington.

### 3. The Second Detention Hearing

On May 20, 2021, defense counsel informed the court that the defense had identified a substitute surety (a woman with the initials N.E.S.), and requested that the detention hearing be reopened. The defense also proposed that Rufai live at N.E.S.'s residence while on pretrial release. The court scheduled a hearing for the following day.

Ahead of the hearing, the government advised the court that it had reviewed a fraud report filed by Bank of America that named N.E.S. as a suspect. The fraud report described an email impersonation scheme that targeted a nonprofit organization. The perpetrator of the scheme pretended to be a donor seeking to give money to the non-profit organization, and deposited $134,800 into the organization's bank account. The "donor" then contacted the organization and said that he or she had intended to send a portion of the deposited money to other organizations, and asked that the non-profit forward the excess funds to three different banks accounts, one of which was N.E.S.'s Bank of America account. N.E.S.'s account received $9,000, which N.E.S. then withdrew through cash withdrawals at two different Bank of America branches. Bank of America closed N.E.S.'s account on suspicion of fraud and attempted to contact her. N.E.S. never responded to her bank's inquiries.

The Pretrial Services Office did not interview or investigate N.E.S. or her residence, where Rufai will stay if released. Ex. B (redacted email from Pretrial Services noting that N.E.S. was not interviewed). At the reopened detention hearing, N.E.S. testified that she is a registered nurse and a family friend of Rufai, and that their families are from the same region of Nigeria. N.E.S. stated that she sees Rufai about once each time he travels to the United States. She said that she was willing to allow Rufai to live at her home in West Babylon, New York, where she lives with her husband. When

Motion for Review of Release Order - 7
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

questioned about the financial transactions discussed above, N.E.S. acknowledged that she previously had an account at Bank of America, into which she said her father sometimes deposited money. However, N.E.S. denied any knowledge of the email impersonation scheme. When asked about her assets, N.E.S. testified that she has $50,000 of equity in her home. She also provided bank statements and an investment account statement reflecting about $3,500 in additional assets.

At the conclusion of the hearing, Magistrate Judge Reyes granted Rufai's motion, and ordered him released on an appearance bond. Ex. C. The bond requires, *inter alia*, that Rufai and N.E.S. execute a $300,000 appearance bond; that Rufai reside with N.E.S.; and that Rufai be subject to location monitoring. Magistrate Judge Reyes granted the government's request for a temporary stay of the release order to allow the government to file this motion for review.

E.   **Criminal Conviction of Idris Soyemi**

Following the second detention hearing, the government learned that Idris Soyemi—the husband of N.E.S. and the other resident of the house where Rufai is planning to live—was convicted of wire fraud in the District of New Hampshire in 2014. *See United States v. Idris Soyemi*, 1:13-cr-0096-PB (D.N.H.). The Indictment alleged that Soyemi purchased stolen PII of at least 36 people between January 31 and February 5, 2013. Ex. D. At a March 31, 2014 plea hearing, Soyemi pled guilty to the wire fraud count and admitted that he used stolen PII to commit credit card fraud and bank fraud, and, further, had expressed interest to an undercover agent in learning how to submit fraudulent claims for tax refunds. Ex. E at pp.13-14.

### III.   DISCUSSION

A.   **The Legal Standard**

"If a person is ordered released by a magistrate judge . . . the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order." 18 U.S.C. §3145(a). This Court conducts a *de novo*

Motion for Review of Release Order - 8
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

review to determine whether release is permissible under 18 U.S.C. § 3142. *See United States v. Koenig,* 912 F.2d 1190, 1192-93 (9th Cir. 1990). A detention order is necessary if no "condition or combination of conditions . . . will reasonably assure the appearance of [a defendant] and the safety of any other person and the community." 18 U.S.C. § 3142(e).

The government is required to prove risk of flight by a preponderance of the evidence rather, than by the higher clear-and-convincing standard applicable to dangerousness determinations. *See United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). In determining whether this standard is met, the court considers: (1) the history and characteristics of the defendant; (2) the nature and circumstances of the offense charged; (3) the weight of the evidence against the defendant; and (4) the nature and seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g). The government may submit evidence to the court by proffer or hearsay. *United States v. Winsor,* 785 F.2d 755, 756 (9th Cir. 1985).

**B.  Rufai Presents an Extreme Flight Risk**

    **1.  Rufai's History and Circumstances Heavily Weigh in Favor of Detention.**

Rufai's history and circumstances leave no doubt that he presents an extreme risk of flight.

*First*, Rufai has no reason to remain in this country, and a strong incentive to flee. Rufai is a Nigerian national who intended to leave the United States even *before* he knew he was charged with serious felonies. He has no ties to the Western District of Washington—apart from using Washington residents' stolen identities to rob Washington state coffers. His ties to the United States are limited to visiting this country three times in the last five years to visit one of his siblings—and that sibling recently refused to sign a bond to secure Rufai's release. Rufai has no capacity to lawfully earn an income here and has no legal status. Rufai undoubtedly knows well that remaining in this country

Motion for Review of Release Order - 9
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

pending trial will promise him no benefit and will instead lead to a lengthy prison sentence.

*Second*, Rufai's strong political and personal connections to Nigeria make the risk of flight particularly strong. Rufai has a wife, young children, and a large extended family in Nigeria, and he acknowledged to Pretrial Services that he is very close with the 14 siblings that live there. Of particular concern, he is politically connected and is a Senior Special Assistant to the Governor of a Nigerian state. As noted above, while the Governor responded to Rufai's arrest by suspending him from the position, he did not terminate him. Extradition from Nigeria is difficult under the best of circumstances, and Rufai can be expected to try to use his political connections to frustrate any extradition attempts.

*Third,* Rufai has financial resources that will enable his flight. While Rufai represented to Pretrial Services that he has only $16,000, there are good reasons to doubt that claim. When he was arrested, Rufai was preparing to travel first-class to Lagos. The cost of a round-trip first-class flight between New York and Lagos can easily exceed $10,000. Rufai was wearing a luxury Cartier watch and carrying five debit cards, two credit cards, three smartphones, and seven pieces of luggage. While the government does not yet have access to Rufai's Nigerian bank records, American records show that when Rufai was last in the United States, he deposited nearly $300,000 into a single U.S. bank account in a six-month period. Given the breadth of fraudulent activity evidenced by his email account and described above, he likely has vastly more resources than he has disclosed.

**2. The Nature and Circumstances of the Charged Offenses Strongly Weigh in Favor of Detention.**

The nature and circumstances of the charged offenses also strongly weigh in favor of detention. The nature of Rufai's crimes—crimes of dishonesty against the government—make Rufai a particularly poor candidate for supervision. Rufai has spent years deceiving government agencies and other Americans through the multitude of fraud

Motion for Review of Release Order - 10
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

schemes evidenced in his email account. Given this long pattern of dishonesty, the Court can have no confidence that Rufai will be honest with Pretrial Services or comply with court orders.

Rufai was a participant in what may have been the largest fraud in Washington state history. When the tragic COVID-19 pandemic hit, Rufai's response was to find a way to exploit the United States government's relief efforts, causing not only monetary loss of public relief funds, but also hardship for workers whose benefits were delayed because their identities had been stolen. It would be a gross miscarriage of justice if Rufai was able to escape accountability for these crimes by fleeing the country he defrauded.

### 3. The Strength of the Evidence is "Formidable."

The evidence against Rufai is overwhelming. The email account used to submit the fraudulent claims is clearly Rufai's: the account is linked to Rufai's phone number; it contains Rufai's photographs and the address where Rufai was staying; and the account was used to search for the U.S. visa application site on the same day Rufai applied for a U.S. visa. Fraud proceeds were mailed to Rufai's brother's address (while Rufai was staying there), and he received unexplained funds approximating the amount of the fraud during the offense period. It is easy to see why the defense reasonably conceded at the first detention hearing that the case against Rufai is "formidable." This factor weighs heavily in favor of detention.

### C. The Conditions Ordered by the Eastern District of New York Do Not Address Rufai's Flight Risk.

The facts discussed above clearly establish, under the applicable preponderance of the evidence standard, that Rufai presents a serious risk of flight. The conditions of release imposed by the magistrate judge do not adequately address that risk.

*First*, the $300,000 appearance bond will not assure Rufai's appearance as required. Because Rufai is not a resident of this country and presumably keeps his assets in Nigeria, he will face no personal financial consequences if he defaults on the bond and

Motion for Review of Release Order - 11
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

flees. As Rufai's brother apparently recognized when he refused to sign the bond, the consequences of Rufai's nonappearance will instead fall on the surety. The question, then, is whether those consequences to another person are sufficient to outweigh Rufai's personal incentive to flee. It is not readily apparent that Rufai is particularly close with the surety (by her account they have seen each other a few times in the last five years), so her interests are highly unlikely to outweigh, in Rufai's mind, his own personal interest in avoiding jail and returning to his prosperous lifr in his home country. Further, Rufai has shown he has the ability to steal hundreds of thousands of dollars through fraud, with ease, in a short period of time. Rufai could simply flee the country, continue his fraudulent activities, and repay the surety with the proceeds in short order if he chose to do so. The bond does not provide a meaningful deterrent to flight.

*Second*, the condition that Rufai be required to live with N.E.S. will not address the flight risk. The Pretrial Services Office for the Eastern District of New York did no investigation into this living situation. The government's investigation revealed that one resident and co-owner of the house (Idris Soyemi) was convicted of federal wire fraud for participating in financial fraud similar to some of the allegations against Rufai. And, there is evidence that N.E.S. has also participated in fraud. Ordering Rufai to live with these people does nothing to mitigate Rufai's risk of flight.

*Third*, the requirement that Rufai surrender his passport will not assure his appearance. As discussed above, Rufai is experienced in obtaining and trafficking in stolen identities and identification documents. He has the skills and resources to produce fraudulent documents that would allow him to leave the country. Alternatively, Rufai could simply slip over the border without documents, or simply hide out in the United States.

Finally, location monitoring will not guarantee Rufai's appearance. A defendant determined to flee can simply remove his location monitoring device and disappear, long before authorities know that he has done so. Given Rufai's strong incentive to flee and ability to do so, location monitoring provides no assurance that he will appear for trial.

Motion for Review of Release Order - 12
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

As a foreign national with no ties to the district of prosecution, Rufai presents an extraordinary flight risk. The conditions ordered by the magistrate judge are insufficient to address that risk. And as Rufai well knows, if he does flee, it is likely he will be gone forever. The only way to ensure that Rufai is held accountable for his crimes is to order him detained pending trial.

DATED: May 24, 2021.

Respectfully submitted:
TESSA M. GORMAN
Acting United States Attorney

*s/ Seth Wilkinson*
SETH WILKINSON
CINDY CHANG
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

Motion for Review of Release Order - 13
*United States v. Rufai* - MJ-5101

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970