UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Case No. 21-MJ-00598(JRC) |
| | * | |
| | * | Brooklyn, New York |
| | * | May 19, 2021 |
| v. | * | |
| | * | |
| ABIDEMI RUFAI, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * *

TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL APPLICATION
BEFORE THE HONORABLE RAMON E. REYES
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        LINDSEY OKEN, ESQ.
                          Asst. United States Attorney
                          United States Attorney's Office
                          271 Cadman Plaza
                          Brooklyn, NY 11201

For the Defendant:         MICHAEL C. BARROWS, ESQ.
                          Barrows Levy, PLLC
                          100 Quentin Roosevelt Ave, 11530
                          Garden City, NY  11596

                          MICHAEL D. WEIL, ESQ.
                          Federal Defenders of New York
                          One Pierrepont Plaza, 16th Floor
                          Brooklyn, NY  11201




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1          (Proceedings commenced at 9:09 a.m.)

2              THE CLERK:  This is criminal cause for a bail

3      application, Docket No. 21-MJ-598, USA vs. Abidemi Rufai.

4              Counsel, will you state your appearance.

5              THE COURT:  Hold on.  Just a second, Lewis.  Hold

6      on just a second.

7              Everyone who has called in, whether by computer or

8      by cell phone, mute your microphones.  If you don't, we're

9      going to get feedback and we won't be able to hear clearly.

10     I can see there are several callers that have not muted their

11     phones.  Please mute your phones.  People are not listening

12     to me.

13             All right.  Go ahead, Lewis.

14             THE CLERK:  This is a criminal cause for a bail

15     application, 21-MJ-598, USA vs. Abidemi Rufai.

16             Counsel, please state your appearances, starting

17     with the government.

18             MS. OKEN:  Good morning, Your Honor.  Lindsey Oken

19     for the government.

20             THE COURT:  Good morning.

21             MR. WEIL:  Good morning, Your Honor.  It's Michael

22     Weil, Federal Defenders, for Mr. Rufai.  (Indiscernible) to

23     be relieved on the record.

24             THE COURT:  I understand that Mr. Barrows is

25     retained counsel now, so Mr. Weil is relieved.

3

1          MR. WEIL:  Thank you, Judge.

2          MR. BARROWS:  That's correct, Judge.  Michael

3     Barrows, Barrows Levy, PLLC, for Mr. Abidemi -- incoming

4     counsel for Mr. Abidemi Rufai.  Good morning.

5          THE COURT:  So you have a bail application to

6     present, Mr. Barrows?

7          MR. BARROWS:  I do, Judge.

8          THE COURT:  Go ahead.

9          MR. BARROWS:  Okay.  Judge, at the outset, it

10    should be noted that a presumption of detention does not

11    attach here where Mr. Rufai is charged with wire fraud.

12         In fact, district courts across this country have

13    uniformly held that wire fraud is not the type of crime

14    designated for mandatory detention.

15         And that is because wire fraud is not a crime of

16    violence, it is not a crime that concerns a controlled

17    substance, and is not a crime that involves minors.  That's

18    *U.S. vs. Salls* and *U.S. v. Ganz*.

19         Accordingly, it's incumbent upon the government to

20    establish elements necessary to warrant pretrial detention.

21         With respect to flight risk, the government carries

22    a dual burden in seeking pretrial detention.  First, it must

23    establish beyond a preponderance of the evidence that the

24    defendant if released presents an actual risk of flight.

25    Assuming it satisfies this burden, the government must then

4

1    demonstrate by a preponderance of the evidence that no

2    condition or combinations of conditions could be imposed on

3    the defendant that would reasonably ensure his presence at

4    court.  That's *U.S. v. Sabhnani*, S-A-B-H-N-A-N-I.

5            With respect to dangerousness to any other person

6    or the community, they must prove this element by clear and

7    convincing evidence.  That's *U.S. v. Hinton*.

8            Ultimately the legal standard required for pretrial

9    detention is one of reasonable assurances and absolute

10   guaranties.  *U.S. v. Orta*, O-R-T-A.

11           As conceded by the government in it's May 18th,

12   2021 letter, the factors relevant in determining whether to

13   detain Mr. Rufai pretrial are:  One, the nature and

14   circumstances of the offenses charged including whether

15   they're crimes of violence; two, the weight of the evidence

16   against the defendant, Mr. Rufai; defendant's history and

17   characteristics; and four, the nature and seriousness of the

18   danger to any person or the community that would be posed by

19   defendant's release.  18 U.S.C. 3142(g).

20           Moreover, with respect to economic crimes such as

21   those charged against Mr. Rufai, the government must prove

22   more than the fact of a serious economic crime that generated

23   great sums of ill-gotten gains.  Merely having access to

24   significant funds is not enough.  *U.S. v. Giordano*, and

25   that's a Southern District Florida case.

5

1          In the case of (indiscernible) it's respectfully

2     submitted that the government has failed to carry its dual

3     burden in establishing, one, that Mr. Rufai is a flight risk

4     or a danger, and most importantly that there are no

5     conditions which will ensure his future appearance in court.

6          First, the nature and circumstances of the offense

7     charged.  The nature and circumstances of Mr. Rufai's alleged

8     offense militates his pretrial (indiscernible).  Federal bail

9     reform statutes suggests that a defendant presents a greater

10    risk of flight if (indiscernible) of violence (indiscernible)

11    and those involving a minor victim, a controlled substance,

12    firearms, explosives or other destructive devices.  18 U.S.C.

13    1342(g).

14          Mr. Rufai is not accused of any such offenses, Your

15    Honor.  Rather, Mr. Rufai allegedly submitted fraudulent FEMA

16    disaster relief claims, fraudulent submissions to the IRS

17    from 2020 to the -- 2017 to the present.

18          Such a crime, while serious, is not indicative of a

19    disrespect for judicial authority or a cavalier attitude

20    towards the reach of law enforcement such that Mr. Rufai

21    cannot be trusted to appear in court.  *U.S. v. Demmler*, D-E-

22    M-M-L-E-R.

23          Thus the nature and circumstances of the offense

24    therefore militate in favor of pretrial release.

25          Second --

6

1          THE COURT:  No.  No.  No.  The case law you just

2     cited -- and the argument is that other crimes are more

3     indicative of a risk of flight than financial crimes.  It

4     doesn't say that financial crimes are not indicative of a

5     risk of flight.  It's one of relative risk of flight.

6          MR. BARROWS:  That is correct, Your Honor.  That is

7     correct, 100 percent.

8          THE COURT:  Okay.  So.

9          MR. BARROWS:  And I'm not minimizing the severity

10    of the crimes alleged by any means or by any stretch, Judge.

11         Second, the weight of the evidence.  No one can

12    deny that the weight of the evidence against Mr. Rufai is

13    formidable.

14         However, although the statute permits the Court to

15    consider evidence of guilt, it neither requires nor permits a

16    pretrial determination that the defendant is guilty.  *U.S. v.*

17    *Montamedi*, M-O-N-T-A-M-E-D-I, *U.S. v Edson* and *U.S. v. Elson*.

18         Evidence of guilt may be considered only as it

19    informs the likelihood that Mr. Rufai will fail to appear,

20    *U.S. v. Montamedi*.  "Otherwise, if the Court impermissibly

21    makes a preliminary determination of guilt, the refusal to

22    grant relief could be in substance a matter of punishment."

23    That's a quote from *U.S. v. Montamedi*.

24         Although the weight of evidence in this matter may

25    militate in favor of detention, Mr. Rufai is no more a flight

7

1    risk than any other defendant whom the government's case is

2    strong.  Thus, the weight of the evidence -- thus, it is

3    respectfully submitted that the weight of the evidence is,

4    therefore, the least important of these various factors.

5    *U.S. v. Montamedi*, citing *U.S. v. Honyman*, H-O-N-Y-M-A-N.

6              Third, the history and characteristics of the

7    defendant.  The government urges pretrial detention based

8    upon my reading of the May 18th, 2021 letter from the USA of

9    the Western District of Washington, because he was, quote,

10   "arrested at the airport as he prepared to board a flight to

11   his country of citizenship."  That's at page 2, Your Honor.

12             This accusation upon scrutiny, however, does not

13   merit pretrial detention.  There is no evidence that Mr.

14   Rufai was seeking to exit the country to avoid arrest.  In

15   fact, the government conceded Mr. Rufai, quote, "prepared to

16   board a plane," quote, "before he was aware of the multiple

17   felony charges he faced in the United States."  Thus, there

18   is absolutely no correlation between the indictment and Mr.

19   Rufai's decision to leave the country to return home to his

20   wife and two young children.  Nor was Mr. Rufai under any

21   obligation to inform the government of his intent to travel

22   back to Nigeria at the time he was arrested.

23             In sum, the government's claim that Mr. Rufai was

24   seeking to board a plane when he was apprehended for the

25   crimes alleged (indiscernible) prosecution failed to clear

8

1    the statutory hurdle requiring the government to show by a

2    preponderance of the evidence both that Mr. Rufai is a flight

3    risk and that no condition of release under -- that there is

4    no conditions of release upon which Mr. Rufai will appear.

5         Restated, Mr. Rufai's conduct in boarding a flight

6    years after he allegedly began committing crimes in the

7    United States in 2017 is not indicative, as the government

8    would suggest, of a predisposition to flee the country.  If

9    anything, it's respectfully submitted it demonstrates his

10   desire to return home to see his family.

11        Moreover, as set forth in the Pretrial Services

12   report, a criminal record check conducted through the

13   National Crime Information Center, state and local records,

14   reveals no criminal history for the defendant, one's prior

15   history, once again, militating in favor of pretrial release.

16        It is first -- it is further submitted that Mr.

17   Rufai's status as a Nigerian National should not weigh

18   heavily in favor of pretrial detention in this matter, but

19   rather militate in favor of pretrial release.

20        As the government concedes, Mr. Rufai holds a

21   distinguished governmental position in his home country as

22   the, quote, senior special assistant to the governor of Ogun,

23   a Nigerian state.  It goes without saying that only an

24   individual of high moral character and integrity could

25   achieve such a distinguished governmental position.

1          Fourth and finally, the nature and seriousness of

2     the danger to any person or community that would be posed by

3     defendant's release.

4          In support of its arguments that Mr. Rufai poses a

5     significant economic danger to the community, the government

6     cites two cases, both of which are easily distinguishable

7     from the case so far.  And those would be the *Reynolds* case,

8     R-E-Y-N-O-L-D-S, case, and the *Otunyo*, O-T-U-N-Y-O, case.

9          The *Reynolds* case is easily distinguishable because

10    the defendant was already convicted of the crimes when he

11    sought release pending his appeal.  Conviction ipso facto

12    satisfies the clear and convincing and preponderance of the

13    evidence standards previously mentioned.

14          Here, Mr. Rufai has not been convicted of any

15    crimes alleged in the government's complaint.  In fact, he

16    has never been convicted of a crime.  In its May 18th letter

17    -- oh, sorry.

18          In *Reynolds*, furthermore in *Reynolds*, the defendant

19    was granted pretrial release.  And as the holding makes clear

20    was subsequently found to have violated such release.  I

21    would suggest the same determination should apply with equal

22    force to Mr. Rufai and that the Court grant Mr. Rufai's

23    application to be released.

24          I would further highlight that the defendant in

25    *Reynolds* the restitution paid was $50,000 more -- it was

1    400,000 -- $50,000 more than is alleged to have been the

2    product of Mr. Rufai's machinations in this case, Judge.

3            The second case cited by the government, *U.S. v.*

4    *Otunyo*, further supports Mr. Rufai's request for pretrial

5    release upon, as we will -- as I will discuss in a moment,

6    the additional conditions of confinement to his brother's

7    (indiscernible), an officer of the court in the State of

8    Atlanta, Georgia, and with electronic monitoring.

9            As I'll discuss very soon, those conditions were

10   not to be imposed or not suggested to be imposed by Pretrial

11   Services.  We would suggest that those would be appropriate

12   to secure Mr. Rufai's attendance at court.

13           As the Court points out in *Otunyo*, in appropriate

14   circumstances a defendant may be temporarily released to the

15   custody of a family member pursuant to 3142(i).  And the

16   cited there was *Thomas*.

17           And in that case, it says the case law suggests

18   that family members may constitute, quote, "appropriate

19   persons," end quote, where the defendant is released to

20   relatives and placed under house arrest.  Also quoting *U.S.*

21   *v. Dhavale*, D-H-A-V-A-L-E.

22           Here, Mr. Rufai suggests that over and above the

23   pretrial report recommendations, Pretrial Services

24   recommendations, that there be an additional condition of his

25   release over and above those recommended by Pretrial

1    Services, and that is that he be confined to his Brother

2    Alaba Rufai's home in Jamaica, Queens.

3            As the government is well aware, having interviewed

4    Mr. Alaba Rufai, he is an attorney practicing law and in good

5    standing in Atlanta, Georgia.  He also has long-standing ties

6    to the United States.  Accordingly we suggest to the Court

7    that he is an appropriate third-party custodian.

8            THE COURT:  Wait just a second.  Alaba Rufai

9    practices law in Georgia but lives in New York?

10           MR. BARROWS:  He lives in New York.  He goes back

11   and forth, Judge.  But primarily it's my understanding that

12   he is in New York, but he does practice -- he does real

13   estate, Judge, so it's not necessarily a site as practice

14   where he could practice from anywhere.

15           MR. A. RUFAI:  I am sorry to interrupt, Your Honor.

16           THE COURT:  Not yet.  Not yet.  You can clarify

17   anything later.

18           MR. BARROWS:  And, Judge, I'm sorry.  Mr. Rufai was

19   supposed to be at my office.  He just couldn't make it this

20   early in the morning.  He did come -- never mind.

21           As noted above, Judge, the government's burden in

22   seeking pretrial detention is two-fold.  First, it must

23   establish a risk of flight or that Mr. Rufai poses a danger

24   to the community or both.

25           Assuming the government has cleared this initial

12

1    hurdle, it must also demonstrate by a preponderance of the

2    evidence that no condition or combination of conditions could

3    be imposed by this court that would reasonably assure his

4    presence.

5           In making this determination, it is respectfully

6    submitted that the Court must be, quote, "mindful of the

7    reality that pretrial detention may hinder defendant's

8    ability to gather evidence, contact witnesses or otherwise

9    prepare for his defense," end quote.  *U.S. v. Demmler*.

10          Accordingly, the Court should order pretrial

11   detention only if there are no conditions upon which Mr.

12   Rufai's appearance and lack of dangerousness can reasonably

13   be assured.

14          Here there exist several, in fact multiple

15   conditions which can be imposed upon Mr. Rufai to ensure his

16   appearance, conditions over and above those suggested by

17   Pretrial Services.

18          THE COURT:  Why don't you tell me what your bail

19   package is.

20          MR. BARROWS:  My bail package is, Judge, we have

21   the following conditions.  We ask that he be released to

22   third-party custodian, his brother.  That he have to remain

23   in the brother's home.

24          That he be restricted to the Southern District and

25   Eastern District of New York, that condition, and Western

13

1    District of Washington unless otherwise approved by Pretrial

2    Services.  That's one of Pretrial Services' recommendations.

3          He surrender all travel documents to the extent

4    that he has them any longer.  I believe they were taken from

5    him.  He does not apply for or obtain any travel documents.

6    He reports to Pretrial Services.  He be subject to random

7    home visits.  And those are all Pretrial conditions.

8          We'd also suggest conditional conditions which

9    would be have him be remanded to the custody of his brother

10   as a third-party custodian and electronic monitoring, Judge.

11   That will ensure that Pretrial Services will have tabs on him

12   and know his whereabouts on a 24/7 basis, negate any fears

13   that he would leave this country.

14         In addition, Judge, Pretrial Services does suggest

15   a substantial bond that be co-signed by his brother, Judge.

16   His brother is ready, willing and able to co-sign the bond

17   under the conditions afore-stated.  The issue of what the

18   bond would be, Judge, I leave in the discretion of the Court.

19   So we would suggest something in the amount of 100 to

20   $200,000, Judge.

21         THE COURT:  Ms. Oken?

22         MS. OKEN:  Thank you, Judge.

23         The government is asking that the defendant be

24   detained (indiscernible) removal to the Western District of

25   Washington.  The defendant is charged with orchestrating what

14

1       may have been one of the largest (indiscernible) schemes to

2       secure fraudulent unemployment benefits in Washington State.

3       The underlying conduct here involves the theft of American's

4       personal identifying information, the use of that information

5       to submit fraudulent claims, and then the use of strategic

6       methods that enabled the defendant to continue

7       (indiscernible).

8               As noted in both the complaint and the detention

9       memo, Judge, the investigation indicates the defendant

10      submitted similar fraudulent claims in at least ten other

11      states, including New York, suggesting that the loss amount

12      may be substantially higher.

13              There's also strong evidence that this is not the

14      defendant's first time engaging in conduct designed to

15      defraud the United States Government.

16              So, Judge, given the duration and scope of the

17      fraud here, the government believes the defendant does

18      present a danger to the community of ongoing criminal

19      conduct.

20              But more troubling, Judge, to the government, the

21      extreme risk of flight that this defendant presents.  He is a

22      Nigerian National with no known ties to the district of

23      prosecution, which is the Western District of Washington.

24              He has demonstrated that he has plans to leave the

25      United States, and in fact was arrested on Friday night at

1    JFK Airport where he planned to board a flight to Amsterdam

2    that would continue on to Nigeria.

3            Now, Your Honor is aware of the pending charges for

4    which I should note he faces up to 30 years on each of five

5    counts, his risk of flight increases exponentially --

6            THE COURT:  Let me ask you a question.  A V2

7    tourism visa, how long does that last?

8            MS. OKEN:  I believe, Judge, that he was permitted

9    to be in the United States through September of 2021.

10           THE COURT:  All right.

11           MS. OKEN:  As noted in the detention memo, the

12   defendant also has strong political ties in Nigeria

13   (indiscernible) difficult, if not impossible to accomplish

14   should the defendant flee.

15           Your Honor, perhaps more importantly, despite what

16   he reported to Pretrial in terms of his financial records,

17   the evidence in this case suggests that the defendant has

18   access to significant financial resources.

19           Even without records from the defendant's home

20   country, bank records for an account in the defendant's name

21   in the U.S. show that he received nearly $300,000

22   (indiscernible).  And he was also  arrested while preparing

23   to board a flight (indiscernible) luxury watch, seven pieces

24   of luggage and three (indiscernible).

25           (Indiscernible) bail package that's been presented.

1    It's alleged in the complaint that the defendant's brother's

2    address is not (indiscernible) during the period that he's

3    alleged to have committed much of the underlying conduct in

4    this case.  The defendant also received fraud proceeds at his

5    brother's address in New York.

6              The government has significant concerns about this

7    particular bail package and his brother's ability to serve as

8    a suitable surety.

9              So in light of these circumstances, Your Honor, and

10   in particular the serious risk of flight here, the government

11   is requesting that the defendant be removed to the Western

12   District of Washington in custody, at which point the

13   (indiscernible) District of Washington can assess whether

14   perhaps a stronger bail package for pretrial release might be

15   appropriate.

16             THE COURT:  Mr. Barrows, last word?

17             MR. BARROWS:  Judge, I would suggest -- I mean, we

18   went over and above what Pretrial Services had suggested.  We

19   would do anything in order to have him out so that he can

20   prepare his trial.

21             I just would note that the bank account with the

22   $288,825 in deposits, in the documents that I have it says

23   that during the period of the fraud, alleged fraud, a single

24   bank account received those deposits.

25             There's nothing in here to state that he has any of

1    that money, that that money was his in the first place, or

2    that he even has access to it.  I'm assuming everything has

3    been frozen by now by the government so he doesn't have

4    access to funds, Judge.  He would be placed at home under the

5    supervision of an officer of the court, Judge, with whatever

6    bail Your Honor or bond Your Honor decides would be

7    appropriate.

8          And I think -- I don't think that his brother would

9    risk his license as an officer of the court in doing anything

10   that would subvert Your Honor's authority or the authority of

11   the Western District of Washington.

12         THE COURT:  All right.  While the government has

13   satisfied its burden to establish by a preponderance of the

14   evidence that Mr. Rufai is a risk of flight, it has not

15   established its burden to prove that there are no conditions

16   or combinations of conditions that can secure his presence in

17   the jurisdictions to face these charges.

18         We will release Mr. Rufai on a $300,000 bond with

19   --

20         Ms. Oken, did you say something?  Oh, I'm sorry.

21   Okay.

22         -- $300,000 bond, travel restricted to the Eastern

23   District of New York and the Western District of Washington.

24   Mr. Rufai will be placed under Pretrial Services' supervision

25   subject to random home visits.  He will reside with his

18

1    brother in Queens.  He will be on home confinement with

2    electronic monitoring.  His brother will be a surety and will

3    also be the third-party custodian.  He cannot apply for any

4    passports or international travel documents.  And I assume

5    that his travel documents have already been seized by the

6    agents.

7         Ms. Oken, I understand that you're opposing

8    release, but are there any other conditions that you would

9    suggest that the government would want in place?

10        MS. OKEN:  No, Your Honor.  But we would

11   respectfully request a stay of Your Honor's opinions pending

12   consulting with the AUSA in the Western District of

13   Washington who I expect may file an appeal.

14        THE COURT:  It's going to take a while for Mr.

15   Rufai to be -- go to the Western District of Washington in

16   any event.  Is there a date set for a conference there?

17        MS. OKEN:  There is not, Your Honor.  I think the

18   Court in the Western District of Washington was waiting until

19   the timing of Mr. Rufai's arrival there would be determined

20   and at which point I think (indiscernible).

21        THE COURT:  I'll stay this until tomorrow.  If they

22   want to appeal, they have to do that by tomorrow.

23        MS. OKEN:  I understand.  Thank you, Judge.

24        MR. BARROWS:  Thank you, Your Honor, for your

25   courtesies.

1          THE COURT:  So while we're here, I can -- I guess

2     we'll fill out the bond and we'll get everything done now.

3     And then if they appeal, so be it.  If not, then Mr. Rufai

4     will be released tomorrow.

5          I'd like to first speak with his brother.

6          Mr. Rufai, can you unmute your phone?

7          MR. A. RUFAI:  Good morning.

8          THE COURT:  Good morning, Mr. Rufai.  Can you

9     please state your name for the record.

10         MR. A. RUFAI:  My name is Alaba Rufai.

11         THE COURT:  Mr. Rufai, I'm going to ask you some

12    questions.  Your answers must be made under oath.

13       (Mr. Rufai is sworn.)

14         THE COURT:  Abidemi is your brother, correct?

15         MR. RUFAI:  That's correct.

16         THE COURT:  Who's older?

17         MR. A. RUFAI:  I am older.

18         THE COURT:  You're an attorney licensed to practice

19    law in the State of Georgia?

20         MR. A. RUFAI:  No, Your Honor.

21         THE COURT:  Are you licensed to practice law in the

22    State of New York?

23         MR. A. RUFAI:  Yes, Your Honor.

24         THE COURT:  Okay.  And you -- I think maybe this is

25    what's going to tell me, do you practice law in Georgia?

1         MR. A. RUFAI:  No, I do not, Your Honor.

2         THE COURT:  What is your connection with the State

3    of Georgia?

4         MR. A. RUFAI:  I have my family in the State of

5    Georgia.  I have my children go to school, so I have a second

6    home in the state.

7         THE COURT:  You have a second home in Georgia?

8         MR. A. RUFAI:  Yes.

9         THE COURT:  Okay.  You heard our discussions about

10   releasing your brother, yes?

11        MR. A. RUFAI:  Yes, sir, I did.

12        THE COURT:  All right.  Do you understand what it

13   means to sign a bond?

14        MR. A. RUFAI:  I do, but -- I do, yes, sir.

15        THE COURT:  Okay.  So we're going to release your

16   brother on the terms that I mentioned.

17        If he violates them, not only will he face

18   repercussions for that, most likely he'll be detained, but

19   you would also be subject to pay the government $300,000,

20   which is a lot of money.  They can seize your assets or

21   garnish your wages to try to find that amount.

22        Do you understand that?

23        MR. A. RUFAI:  I do not agree to that, Your Honor.

24        THE COURT:  You do not?

25        MR. A. RUFAI:  I do not, Your Honor.  I do not have

1   the financial (indiscernible) to that.

2        THE COURT:  Well, Mr. Barrows, unless Mr. Rufai

3   agrees to be a surety, I'm not going to release his brother.

4        You're muted.

5        MR. BARROWS:  Judge, may I have a second to just

6   communicate with Mr. Rufai?  Would Your Honor allow me that?

7   I would go off and call him on the cell -- on my mobile if

8   Your Honor would just allow me a brief pause.

9        THE COURT:  If he -- yes.  He's going to have to

10  hang up from this call though, or I don't know if he can take

11  multiple calls on his cell, but you can have three minutes.

12       MR. BARROWS:  Thank you, Judge.  I really

13  appreciate that, Your Honor.  Hold on.

14     (Pause.)

15       OFFICER LEE:  Your Honor, this is Anna Lee from

16  Pretrial Services.

17       THE COURT:  Hi, Anna.  I see that you just sent me

18  the third-party custodian form.

19       OFFICER LEE:  Okay.  I just wanted to see.  And

20  then just to let you know that if he is accepted, we'll do

21  the criminal record check after the hearing.

22       THE COURT:  Okay.

23     (Pause.)

24       MR. BARROWS:  I'm back, Judge.

25       THE COURT:  Okay.  Is Mr. Rufai back on the line?

22

1          MR. BARROWS:  I believe he's there and just muted,

2     Judge.

3          If I may, I did have a conversation, and the issue

4     is having the property or having the ability to post that

5     bond, Judge, and that's why he's unable to do it.  Not for

6     love of his brother, he just doesn't have the 300,000 in

7     collateral to put up, Judge.

8          THE COURT:  I don't think Mr. Rufai understands how

9     the federal system works.

10          It's not that he has to put up -- we're not asking

11     for property to be posted to secure the bond, and no cash

12     component to it, so it's just a promise to pay that amount

13     over time if necessary to satisfy the full bond.

14          MR. BARROWS:  Mr. Rufai, did you hear that?

15          MR. A. RUFAI:  Yes, I did.  But I (indiscernible).

16     I had gone into some financial arrangements that make it

17     impossible for me to commit to that.

18          THE COURT:  Okay.  I think then it's an easy call.

19     If Mr. Rufai -- I think a $300,000 bond is appropriate in

20     this case.

21          It's a substantial fraud that we're talking about

22     if it's in fact true.  The amount of the bond is the correct

23     amount for a crime of this nature and a surety is an absolute

24     in my mind requirement for this case.

25          And if Mr. Rufai is not willing to act as a surety,

23

1    that's okay.  That's his decision and I respect that.  But we

2    will not be able to release his brother then.

3              So in light of that, the application is denied with

4    leave to reopen and present a bail package in the future.  I

5    do think this is a bailable case, notwithstanding the

6    government's arguments of risk of flight.

7              We can add conditions as I tried to do to cover

8    that.  But if we don't have one stepping up as a surety,

9    there's nothing I can do.

10             MR. BARROWS:  I appreciate that, Judge.

11             THE COURT:  Okay.  All right.  Is there anything

12   else?

13             MS. OKEN:  Nothing from the government

14   (indiscernible).

15             THE COURT:  When we were here previously, was a

16   permanent order entered or a temporary order?

17             MS. OKEN:  A temporary order was entered.

18             THE COURT:  Okay.  So I will sign then a permanent

19   order of detention to reopen and either -- and he'll be -- if

20   no application is made in the interim, he'll be removed in

21   custody to the Western District of Washington.

22             MR. BARROWS:  Thank you, Your Honor.  I appreciate

23   that.

24             THE COURT:  All right.  Thank you, everyone.

25             MR. BARROWS:  Be well.

24

1          (Proceedings adjourned at 9:45 a.m.)

2     I, CHRISTINE FIORE, court-approved transcriber and certified

3     electronic reporter and transcriber, certify that the

4     foregoing is a correct transcript from the official

5     electronic sound recording of the proceedings in the above-

6     entitled matter.

7

8

9     _____ *Christine Fiore* _____        May 27,

10    2021

11       Christine Fiore, CERT

12         Transcriber

13

14

15

16

17

18

19

20

21

22

23

24