```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *   Case No. 21-MJ-00598(JRC)
                              *
                              *   Brooklyn, New York
                              *   May 21, 2021
      v.                      *
                              *
ABIDEMI RUFAI,                *
                              *
              Defendant.      *
                              *
* * * * * * * * * * * * * * * *

       TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL APPLICATION
            BEFORE THE HONORABLE RAMON E. REYES
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:      ELLEN SISE, ESQ.
                         Asst. United States Attorney
                         United States Attorney's Office
                         271 Cadman Plaza
                         Brooklyn, NY 11201

For the Defendant:       MICHAEL C. BARROWS, ESQ.
                         Barrows Levy, PLLC
                         100 Quentin Roosevelt Ave, 11530
                         Garden City, NY  11596
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1       (Proceedings commenced at 11:02 a.m.)
2               THE CLERK: Okay. This is a criminal cause for a
3    bail application, USA vs. Abidemi Rufai. The Case No. is 21-
4    598M.
5               Can I have the parties state your name for the
6    record. For the government, please.
7               MS. SISE: Good morning, Your Honor. Ellen Sise
8    for the government.
9               THE CLERK: Thank you, Ms. Sise.
10              For the defendant?
11              MR. BARROWS: Michael Barrows for the defendant,
12   Mr. Rufai. Good morning, both.
13              THE CLERK: Thank you. And may I have the
14   defendant state his full name for the record.
15              THE DEFENDANT: My name?
16              THE CLERK: Yes. State your name, please.
17              THE DEFENDANT: Rufai, Abidemi.
18              THE CLERK: Thank you very much.
19              Okay, Judge Reyes.
20              THE COURT: Good morning.
21              So, Mr. Barrows, I understand that you have a
22   substitute surety to present?
23              MR. BARROWS: I do, Your Honor.
24              THE COURT: Tell me.
25              MR. BARROWS: So may I -- there was a letter,

1     Judge, addressed to the Court.  May I just briefly address
2     the issues or would you like the surety's information?
3             THE COURT:  I'd like to -- first -- you can address
4     the issues, but I'd first like to know who the surety is and
5     why the person is an acceptable surety in your mind?
6             MR. BARROWS:  Okay, Judge.
7             The surety, Ms. Soyemi, is the last name, S-O-Y-E-
8     M-I.  She is a family friend of Mr. Rufai's.  Their families
9     come from the same area in Nigeria, known each other for
10    many, many years, Judge.
11            She herself is a registered nurse employed with New
12    York City Health and Hospitals.  She was on the front line
13    during one of the darkest times in America, during COVID.
14            Prior to being a nurse with New York City Health -- RN
15    with New York City Health and Hospitals, she worked as a home
16    -- did home visits for the elderly.  Before that Department
17    of Health, she worked for the New York City Department of
18    Health as a public health advisor in their central health
19    clinics in Harlem, contact tracing syphilis and HIV patients.
20
21            Before that she worked for the Department of
22    Housing for eight years.  Currently she's employed as a nurse
23    earning approximately $10,000 per month as an RN.  She is a
24    citizen of the United States.  She resides in the Eastern
25    District.

1  The government had responded stating that she
2  didn't own the property that I listed in the affidavit I
3  provided to the government, but I have since conducted a
4  search of the Suffolk County property records. She is the
5  owner.
6  It's under her maiden name which is E-G-H-N-R-E-V-
7  B-A. So that may be why the government couldn't find it, but
8  I did confirm that she does own the property.
9  I have spoke to her, Judge. She understands the
10  gravity of her appointment as a surety. She understands the
11  gravity of the financial repercussions if Mr. Rufai were to
12  violate Your Honor's terms of the release. Notwithstanding
13  that, Judge, she is ready, willing and able to act as a
14  surety.
15  With respect to the -- and I won't address the
16  other issues unless Your Honor wants me to -- but there was
17  one issue which was a Bank of America -- seemingly a Bank of
18  America fraud issue possibly that came up. I spoke to her.
19  The only account she ever had at Bank of America
20  was an account when she was a student. There's been no --
21  she has no criminal record. She has no knowledge of what the
22  government is speaking of with respect to that.
23  And I can go into other things, Your Honor. *U.S.*
24  *v. Sanders*, again, just if Your Honor would indulge me
25  briefly, I think one of the government's arguments is she

1   doesn't possess sufficient means, financial means, to act as
2   a surety.
3           And just briefly, *U.S. v. Sanders* has made clear
4   under the Bail Reform Act even if it is likely -- and this is
5   a quote -- "that the co-signers do not each have sufficient
6   assets available today, each stands for real and long-lasting
7   financial harm if the defendant disappears and the government
8   obtains a money judgment against them."
9           The Court further held in granting bond, upon the
10  surety's pledge to be bound by the monetary conditions, the
11  Court held, quote, "the amount of the bond and the selection
12  of its co-signers creates an adequate deterrent for
13  defendant.  It would not want to cause real and significant
14  financial harm to the co-signers."
15          Again, here, Judge, she may not have the asset,
16  meaning to cover 300,000, but she is ready, willing and able.
17  She is a nurse.  She is a front-line hero, Judge.
18          And I would ask that the Court consider
19  substituting her not only as the surety, but she has also
20  graciously offered that Mr. Rufai stay in her home in the
21  Eastern District -- it's in West Babylon, Judge -- the
22  property that she owns under what we hope the same
23  conditions, ankle monitoring, every other condition that Your
24  Honor had issued in the bail hearing two days ago.
25          Lastly, the ICE detention bond, I don't -- without

1   getting into the Fourth and Fifth Amendment issues that so
2   often plague those detainer bonds, the detainer ICE bonds, I
3   don't think it was in existence at the time Your Honor made
4   his prior ruling.
5           It's in existence now, but I think that's for
6   another time, Judge, if Your Honor were to grant bond under
7   the conditions you set forth.  We'll deal with the ICE
8   detainer after the fact.  Thank you.
9           THE COURT:  Well, she owns this house?
10          MR. BARROWS:  She does, Judge.
11          THE COURT:  And how much equity is in it?
12          MR. BARROWS:  The equity is probably around
13  $50,000, Judge.  It's about five -- I think I found on Zillow
14  -- I don't have an estimate, but I think it was 550 was the
15  approximate value.  She owes about 470 would you say was the
16  mortgage?  Four-seventy.  But she does have this job as an
17  RN, Judge, and she does make significant money.
18          THE COURT:  And she owns the house by herself?  Or
19  is there another owner?
20          MR. BARROWS:  There's another owner, her husband.
21          THE COURT:  Is she putting up the house?
22          MR. BARROWS:  Well, Judge, I would -- on prior, I
23  didn't think that that was necessary because Your Honor I
24  think last time had said that he didn't -- it wasn't a pledge
25  of collateral, it was just a -- if the -- if he did leave

1      that --
2            THE COURT:  That's not -- that's not exactly what I
3      said.
4            MR. BARROWS:  Okay.  I may have misinterpreted.
5            THE COURT:  I did say that he didn't -- that he
6      didn't -- because it wasn't contemplated, he didn't put
7      anything up and he doesn't have to put anything up, but
8      frequently we have sureties that do put their homes up.  But
9      I understand you're not -- that she's not doing that -- she's
10     not offering that here.
11           MR. BARROWS:  Correct, Judge.  She is offering to
12     be bound by any money judgment that the Court would impose.
13     Again, she is a citizen.  She is an RN.  She did work for the
14     City for many, many years.  I don't -- you know, I would hope
15     and request that that be sufficient in this instance.
16           Again, if there is a money judgment they can always
17     go after the house, Judge, at some point.
18           THE COURT:  You say that she is a family friend and
19     that she comes from the same area in Nigeria as does Mr.
20     Rufai?
21           MR. BARROWS:  Correct.  Was at Mr. Rufai's first
22     son's christening.  They call it a naming ceremony.  So, yes,
23     she is.  And her family dates -- predates that relationship
24     with, you know -- the Rufai's and her family predate even her
25     relationship with Mr. Rufai.

1          And she is here, Judge, next to me.  If you have
2    inquiries, Judge, I can put her on.
3          THE COURT:  What is Ms. Soyemi's first name?
4          MR. BARROWS:  It's Nekpen, N-E-K-P-E-N.
5          THE COURT:  Ms. Sise, do you want to say anything
6    at this point?
7          MS. SISE:  Just briefly, Your Honor.  I understand
8    the parties had a quite extensive bail hearing earlier this
9    week.  The only thing to add to the government's letters that
10   were submitted by May 18th and May 20th is that I believe
11   that the license address that Ms. Soyemi submitted does not
12   match the property that she owns and that the license address
13   does match her bank statement that she put forward.  So I
14   think there's a little bit of confusion about where Ms.
15   Soyemi resides.
16         MR. BARROWS:  And that is correct, Judge.  March
17   2020 she purchased the home.  It is the -- I believe -- March
18   2021.  I do have the deed, Judge.  It takes a couple of days
19   to pull the deed, but it is on the National -- the Suffolk
20   County property record database.  And I do have some
21   documents here evidencing that.  But it is a publicly
22   available document.
23         And I do have a Mid-Island Mortgage Corp. statement
24   which evidences the property address of 8 Rose Place, West
25   Babylon with the mortgage amount, Judge, for this property

1    that is owned -- that is owned by her.
2              THE COURT:  Okay.  Can I see Ms. Soyemi?
3              MR. BARROWS:  May I get up, Judge, and she'll come
4    here?  Is that okay?
5              THE COURT:  Yes.  Yes.
6              MS. SOYEMI:  Good morning, Your Honor.
7              THE COURT:  Good morning, Ms. Soyemi.  I'm going to
8    ask you some questions.  Your answers must be made under
9    oath.
10         (Nekpen Soyemi is sworn.)
11             THE COURT:  When did you become a citizen of the
12   United States?
13             MS. SOYEMI:  I was born here.
14             THE COURT:  Oh, you were born here?
15             MS. SOYEMI:  Yeah.  I was born in Brooklyn, New
16   York.
17             THE COURT:  Mr. Barrows referred to a naming
18   ceremony for Mr. Rufai's son.
19             MS. SOYEMI:  Yes.
20             THE COURT:  And when was that?
21             MS. SOYEMI:  About five years ago.
22             THE COURT:  And do --
23             MS. SOYEMI:  I don't remember the exact month.
24             THE COURT:  Where was it?
25             MS. SOYEMI:  It was in Queens, New York, here.

1        THE COURT: Was that the last time you saw Mr.
2   Rufai?
3        MS. SOYEMI: No, it was not.
4        THE COURT: When was the last time you saw him
5   personally? In person?
6        MS. SOYEMI: In person? He comes often. I did see
7   him this last trip. We have some familiar friends, so it was
8   at their house. Just a little get-together.
9        THE COURT: How frequently do you see him
10  personally?
11       MS. SOYEMI: When he comes to the States, I see him
12  at least once or twice when he is in the States.
13       THE COURT: Mr. Barrows told me some information
14  about you, what you do for a living, how much you make, about
15  your house, is all of that, what he told me, correct?
16       MS. SOYEMI: Yes, it is, sir.
17       THE COURT: Did Mr. Barrows explain to you what it
18  means to sign a bond?
19       MS. SOYEMI: Yes, sir.
20       THE COURT: And so you understand that should you
21  sign this bond you are obligating yourself to the government
22  to the sum of $300,000 should Mr. Rufai violate the terms of
23  his release?
24       MS. SOYEMI: Yes. Financially, yes.
25       THE COURT: The government will be able to seize

11

1	any assets that you have, garnish any wages that you make to
2	satisfy that amount?
3	Do you understand?
4	MS. SOYEMI:  Yes.
5	THE COURT:  What is the zip code in West Babylon
6	where your house is?
7	MS. SOYEMI:  11704.
8	THE COURT:  And you are living there currently?
9	MS. SOYEMI:  Yes.
10	THE COURT:  It's your primary residence?
11	MS. SOYEMI:  Yes.  That's where I'm living.
12	THE COURT:  There has been some reference to a Bank
13	of America account.
14	MS. SOYEMI:  Yes.
15	THE COURT:  I'm sure you've heard of this.
16	MS. SOYEMI:  Yes.
17	THE COURT:  Do you currently have that account?
18	MS. SOYEMI:  No.  That was a student account that
19	my dad had opened for me while I was in school.  And when I
20	was finished school, I just got my own account.  So when Mr.
21	Barrows made that mention to me, I didn't know what he was
22	speaking of.
23	THE COURT:  Did you -- do you -- when that account
24	was open, did you use it or --
25	MS. SOYEMI:  Yes.  Yes.  Yes.  Yes.  It was an

1   account.  My dad would put money in for when I was in school.
2   I went away to school.
3           THE COURT:  Where did you go to school?
4           MS. SOYEMI:  I went to Stony Brook.
5           THE COURT:  And do you have any knowledge of this
6   alleged $135,000 that went through the account?
7           MS. SOYEMI:  No.
8           THE COURT:  Ms. Sise, do you have any questions
9   that you want to ask Ms. Soyemi?
10          MS. SISE:  No, not at this time.  Thank you, Your
11  Honor.
12          THE COURT:  All right.  I'm just pulling out a bond
13  here.  Bear with me.
14          MS. SOYEMI:  Okay.
15      (Pause.)
16          THE COURT:  And, Ms. Soyemi, you're willing to have
17  Mr. Rufai live with you and your husband in the Rose Place
18  home on home detention with electronic monitoring?
19          MS. SOYEMI:  Yes, sir.
20          THE COURT:  It's the Western District of
21  Washington, is that correct?
22          MS. SOYEMI:  I'm sorry?
23          THE COURT:  I'm sorry, Ms. Soyemi.  I'm asking the
24  lawyers.
25          MS. SOYEMI:  Oh.

1　　　　　　　MS. SISE:  Yes, Your Honor.  That is correct.
2　　　　　　　THE COURT:  Okay.  Just one minute, folks.
3　　　(Pause.)
4　　　　　　　MS. SISE:  I'm sorry, Your Honor.  You're breaking
5　　up a little bit.  Could you repeat that?
6　　　　　　　THE COURT:  I'm sorry.  I'm sorry.  We will be
7　　releasing Mr. Rufai on a $300,000 bond secured by Ms.
8　　Soyemi's signature.
9　　　　　　　His travel will be restricted to the -- to New York
10　　City and the Western District of Washington.  He will be
11　　placed under Pretrial Services' supervision, subject to home
12　　and workplace visits and reporting to Pretrial as directed.
13　　He will be on location monitoring and home detention,
14　　restricted at all times to the home except for attorney's
15　　visits, court appearances, medical treatment, religious
16　　services.  And he must appear in the Western District of
17　　Washington to answer the charges against him.
18　　　　　　　Are there any additional suggestions, conditions
19　　that the government suggests or Pretrial Services?
20　　　　　　　MS. SISE:  No additional conditions, Your Honor.
21　　But if I may be heard on something else?
22　　　　　　　THE COURT:  That deals with the bond?
23　　　　　　　MS. SISE:  Not specifically with the bond, Your
24　　Honor.  But the government would like to move for a stay so
25　　that it may appeal the detention termination.

14

1       THE COURT:  I will stay (indiscernible) or I will
2  stay the release through Tuesday.  So if an appeal is not
3  taken, or a successful appeal is not taken by Tuesday, Mr.
4  Rufai will be released.  However, there's an immigration
5  detainer in place and he'll have to deal with that.
6       MS. SOYEMI:  Thank you, Your Honor.
7       MR. BARROWS:  Judge, I just want to thank Your
8  Honor, the U.S. Attorney's Office, for doing this on such
9  short notice and especially AUSA Oken.  She's been courteous.
10 She's a consummate professional.  And I do appreciate
11 everything everyone's done to enable this to occur in such a
12 timely fashion, Your Honor.
13      THE COURT:  And, Ms. Soyemi, do you authorize me to
14 sign this bond on your behalf?
15      MS. SOYEMI:  Yes, sir.
16      THE COURT:  And, Mr. Rufai, you as well?  Can I
17 sign the bond for you?
18      THE DEFENDANT:  Yes, Your Honor.
19      THE COURT:  All right.  I want to give you a couple
20 of warnings.
21      But before I do that, do you understand the terms
22 of your release?
23      THE DEFENDANT:  Yes, Your Honor.
24      THE COURT:  All right.  Three additional warnings
25 that you need to understand.  First, if you commit any crimes

15

1  when you're out on Pretrial release, that is a violation of
2  the bond.  It would mean that you would be detained on these
3  charges until your trial, plus face charges for any crimes
4  that you may commit.
5         If you fail to come to court when you're supposed
6  to, that's a violation of your bond, so you could be
7  detained.  Plus you would face a charge of bail jumping.  And
8  if you're convicted of the fraud charges and bail jumping,
9  your sentences could be served consecutively.  That's one
10 after the other.
11        If you attempt to influence the testimony of any
12 witness that may appear against you in the case, that's a
13 violation of the bond, so you could be detained on these
14 charges until your trial, plus face charges of witness
15 tampering.  And if you're convicted of the underlying charges
16 and witness tampering, your sentences could be served
17 consecutively.
18        So come to court when you're supposed to, don't
19 commit any crimes, and don't influence the testimony of any
20 witness that may appear against you.
21        Do you understand?
22        THE DEFENDANT:  Yes, Your Honor.
23        THE COURT:  Okay.  All right.  Is there anything
24 else?
25        MS. SISE:  Nothing from the government.  Thank you,

1    Your Honor.
2            MR. BARROWS:  Nothing from the defendant.  Thank
3    you, Your Honor.
4            THE COURT:  All right.  Thank you.
5            MS. SOYEMI:  Thank you.
6            MR. BARROWS:  Be well.
7         (Proceedings concluded at 11:24 a.m.)
8         I, CHRISTINE FIORE, court-approved transcriber and
9    certified electronic reporter and transcriber, certify that
10   the foregoing is a correct transcript from the official
11   electronic sound recording of the proceedings in the above-
12   entitled matter.
13
14   *Christine Fiore*
15   _____     May 27, 2021
16      Christine Fiore, CERT
17         Transcriber