The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ABIDEMI RUFAI,<br><br>Defendant. | NO. CR21-5186BHS<br><br>**PLEA AGREEMENT** |

The United States, through United States Attorney Nicholas W. Brown and Assistant United States Attorneys Seth Wilkinson and Cindy Chang of the Western District of Washington, and Abidemi Rufai, and his attorney, Lance Hester, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

1.      **The Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to each of the following charges contained in the Indictment:

a.      Wire Fraud, as charged in Count 2, in violation of Title 18, United States Code, Section 1343; and

b.      Aggravated Identity Theft, as charged in Count 11, in violation of Title 18, United States Code, Section 1028A.

*United States v. Rufai*, CR21-5186BHS
Plea Agreement - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offenses**. The elements of the offenses to which Defendant is pleading guilty are set forth below:

a. The elements of Wire Fraud, as charged in Count 2, in violation of Title 18, United States Code, Section 1343, are as follow:

*First*, the defendant knowingly participated in, or devised, a scheme or plan for obtaining money or property through false or fraudulent pretenses, representations or promises;

*Second*, the promises, statements, or representations were material, that is, they had a natural tendency to influence a person to part with money or property;

*Third*, the defendant acted with the intent to defraud;

*Fourth:* the defendant used, or caused to be used, the wires in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme; and

*Fifth*, the violation occurred in relation to, or involved, benefit payments authorized, transmitted, disbursed or paid in connection with a presidentially-declared major disaster or emergency.

b. The elements of Aggravated Identity Theft, as charged in Count 11, in violation of Title 18, United States Code, Section 1028A, are as follow:

*First*, the defendant knowingly transferred, possessed, or used, without legal authority, a means of identification of another person;

*Second*, the defendant knew the means of identification belonged to a real person; and

*Third*, the defendant did so during and in relation to the crime of wire fraud.

*United States v. Rufai*, CR21-5186BHS
Plea Agreement - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.    **The Penalties**.  Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follow:

a.    For the offense of wire fraud, as charged in Count 2:  A term of imprisonment of up to 30 years, a fine of up to $1,000,000, a period of supervision following release from prison of up to five years, and a mandatory special assessment of 100 dollars.  If a probationary sentence is imposed, the probationary period can be for up to five years.

b.    For the offense of aggravated identity theft, as charged in Count 11: A mandatory term of imprisonment of two years, which must be consecutive to any other sentence, a fine of up to $250,000, a period of supervision following release from prison of up to one year, and a mandatory special assessment of 100 dollars.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements.  Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed.  This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further

*United States v. Rufai*, CR21-5186BHS
Plea Agreement - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

4.    **Immigration Consequences.**    Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

5.    **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

a.    The right to plead not guilty and to persist in a plea of not guilty;

b.    The right to a speedy and public trial before a jury of Defendant's peers;

c.    The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d.    The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e.    The right to confront and cross-examine witnesses against Defendant at trial;

f.    The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g.    The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

1           h.     The right to appeal a finding of guilt or any pretrial rulings.

2      6.     **United States Sentencing Guidelines**.  Defendant understands and

3 acknowledges that the Court must consider the sentencing range calculated under the

4 United States Sentencing Guidelines and possible departures under the Sentencing

5 Guidelines together with the other factors set forth in Title 18, United States Code,

6 Section 3553(a), including:  (1) the nature and circumstances of the offense(s); (2) the

7 history and characteristics of Defendant; (3) the need for the sentence to reflect the

8 seriousness of the offense(s), to promote respect for the law, and to provide just

9 punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence

10 to criminal conduct; (5) the need for the sentence to protect the public from further

11 crimes of Defendant; (6) the need to provide Defendant with educational and vocational

12 training, medical care, or other correctional treatment in the most effective manner; (7)

13 the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the

14 need to avoid unwarranted sentence disparity among defendants involved in similar

15 conduct who have similar records.  Accordingly, Defendant understands and

16 acknowledges that:

17          a.     The Court will determine Defendant's Sentencing Guidelines range

18 at the time of sentencing;

19          b.     After consideration of the Sentencing Guidelines and the factors in

20 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the

21 maximum term authorized by law;

22          c.     The Court is not bound by any recommendation regarding the

23 sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

24 range offered by the parties or the United States Probation Department, or by any

25 stipulations or agreements between the parties in this Plea Agreement; and

26          d.     Defendant may not withdraw a guilty plea solely because of the

27 sentence imposed by the Court.

28

7. **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8. **Statement of Facts**. Defendant admits Defendant is guilty of the charged offenses. The parties agree on the following facts, and further agree that all of these facts constitute relevant conduct under the United States Sentencing Guidelines:

a. ***Background:*** Defendant Abidemi Rufai is a Nigerian national. Rufai was the operator of various email accounts, including an account with the address "sandytangy58@gmail.com."

b. Rufai obtained the personal identifying information (PII), to include names, dates of birth, and Social Security numbers, of more than 20,000 unwitting Americans. Rufai obtained this stolen PII through unlawful means, including by misusing the Internal Revenue Service's Data Retrieval Tool, which is intended to be used by persons completing the Free Application for Student Financial Aid (FAFSA).

c. As discussed below, Rufai used this stolen PII to fraudulently obtain federally-funded benefits under a variety of relief programs, and by submitting fraudulent claims for tax refunds, in the names of the Americans. In all, Rufai participated in the submission of fraudulent claims seeking in excess of $2 million in federally-funded payments.

d. ***Rufai's Fraudulent Pandemic Unemployment Assistance Claims:*** On March 27, 2020, the United States enacted into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The CARES Act authorized approximately $2 trillion in aid to American workers, families, and businesses to mitigate the economic consequences of the COVID-19 pandemic. The CARES Act funded, and authorized each state to administer, new unemployment benefits. CARES Act unemployment benefits are funded by the United States government through the Department of Labor and administered at the state level by state agencies known as state workforce agencies (SWAs). The Washington Employment Security Department (ESD) is the SWA for the State of Washington.

*United States v. Rufai*, CR21-5186BHS
Plea Agreement - 6

1    e.    CARES Act unemployment benefits were authorized, transferred,

2  disbursed and paid in connection with a nationwide emergency declared by Presidential

3  Proclamation 9994 (effective as of March 1, 2020) and a Presidential declaration of a

4  major disaster for the State of Washington concerning the COVID-19 pandemic that was

5  issued on March 22, 2020.

6    f.    Applicants were permitted to apply for CARES Act benefits online

7  by visiting the web portals of the SWAs for their respective states.  In Washington,

8  applicants applied for benefits using ESD's Unemployment Tax and Benefit (UTAB)

9  system and Washington's SecureAccess Washington (SAW) web identity validation

10  system.  The UTAB and SAW websites are both hosted at the State Data Center in

11  Olympia, Washington.  When a person located outside of Washington applied for ESD-

12  administered benefits, the application process caused a series of interstate wire

13  transmissions originating and terminating in Olympia.

14    g.    Between about April 27, 2020 and October 3, 2020, Rufai accessed

15  ESD's UTAB and SAW websites, as well as the websites of numerous other SWAs.

16  Rufai then submitted more than 135 claims for CARES Act benefits using the stolen PII

17  of at least 135 American workers.  Rufai used the sandytangy58@gmail.com account and

18  other email accounts to activate the claims.  To prevent the SWAs from recognizing that

19  a single email account was being used to submit multiple claims, Rufai inserted periods

20  at various places in the email addresses.

21    h.    As one example of this conduct, on April 27, 2020, Rufai activated a

22  claim using the email address san.dy.t.a.n.g.y.58@gmail.com, which caused the state of

23  Washington to send an email via interstate wire transfer from Olympia, Washington to a

24  Google server outside of the state of Washington.  Similarly, on May 2, 2020, Rufai,

25  without lawful authority, submitted a fraudulent claim using the PII, to include name

26  Social Security number and date of birth, of a person with the initials S.C., a Washington

27  resident whom Rufai knew to be a real person.

28

*United States v. Rufai*, CR21-5186BHS
Plea Agreement - 7

1        i.      When filing the fraudulent claims, Rufai sometimes requested that

2 the funds be paid out to accounts under his control (typically Green Dot Bank accounts),

3 or under the control of persons known as "money mules," who were duped into mailing

4 the money to Rufai. In other cases, the benefits were loaded onto debit cards, which

5 Rufai then used to withdraw the funds. The parties agree that SWAs paid out in excess of

6 $350,000 as a result of these fraudulent submissions. Defendant understands the

7 government intends to present evidence at sentencing that the value of the claims paid by

8 SWAs was at least approximately $500,000.

9        j.     ***Fraudulent Tax Refund Claims:*** Rufai also used American

10 taxpayers' stolen PII to submit fraudulent claims for refunds from the Internal Revenue

11 Service without the taxpayers' knowledge. Between 2017 and 2020, Rufai, using the

12 sandytangy58@gmail.com account, submitted claims seeking over 675 refunds totaling

13 over $1.7 million. The IRS paid out $90,877 based on these fraudulent claims.

14        k.     ***Rufai's Fraudulent Economic Injury Disaster Loan Applications:***

15 The CARES Act also authorized the Small Business Administration to provide forgivable

16 loans known as Economic Injury Disaster Loans (EIDLs) of up to $2 million to eligible

17 small businesses experiencing substantial financial disruption due to the COVID-19

18 pandemic. Qualifying businesses applying for an EIDL must submit an application to the

19 SBA and provide information about its operations, such as the number of employees,

20 gross revenues for the 12-month period preceding the disaster, and cost of goods sold in

21 the 12-month period preceding the disaster. The applicant must also certify that all of the

22 information in the application is true and correct to the best of the applicant's knowledge.

23        l.      Between about April 8, 2020 and June 26, 2020, Rufai submitted at

24 least 19 fraudulent EIDL applications. The SBA paid out a total of $10,000 based on

25 these applications.

26        m.    ***Rufai's Fraudulent FEMA Disaster Claims:*** The Federal

27 Emergency Management Agency (FEMA) is an agency of the Department of Homeland

28 Security. FEMA administers the Individuals and Households Program (IHP), which

*United States v. Rufai*, CR21-5186BHS
Plea Agreement - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  provides financial and direct assistance payments to individuals and households who live

2  in counties impacted by a presidentially-declared major disaster.  The assistance covers

3  uninsured or underinsured necessary expenses and serious needs such as short-term

4  lodging or rental assistance.  On August 25, 2017, a Presidential Emergency Declaration

5  was issued with respect to Hurricane Harvey.  On September 10, 2017, a Presidential

6  Emergency Declaration was issued with respect to Hurricane Irma.

7           n.     Between about September 19, 2017 and October 5, 2017, Rufai

8  submitted fraudulent disaster relief claims to FEMA using the stolen PII of 49

9  Americans.  The claims sought hurricane relief benefits based on claims that the

10  applicants were victims of Hurricane Harvey or Hurricane Irma.  Thirteen of these

11  claims, totaling $6,500, were paid.

12           o.     Through the foregoing conduct, Rufai, with intent to defraud,

13  knowingly devised and participated in a scheme to obtain money and property by means

14  of materially false or fraudulent pretenses and representations, and used interstate wire

15  communication to carry out the scheme.  During and in relation to this scheme, Rufai

16  knowingly possessed and used, without legal authority, means of identification of persons

17  whom Rufai knew to be real people.

18      The parties agree that the Court may consider additional facts contained in the

19  Presentence Report (subject to standard objections by the parties) and/or that may be

20  presented by the United States or Defendant at the time of sentencing, and that the factual

21  statement contained herein is not intended to limit the facts that the parties may present to

22  the Court at the time of sentencing.  Defendant specifically understands that the

23  government may present evidence at sentencing that the actual and intended losses

24  associated with defendant's conduct are greater than the amounts set out above.

25      9.    **Sentencing Factors**.  The parties agree that the following Sentencing

26  Guidelines provisions apply to this case:

27      The following provisions apply to defendant's conviction on Count 2:

28           a.     A base offense level of 7, pursuant to USSG § 2B1.1(a)(1);

1            b.      An increase of 16 points because the intended loss from the offense

2 exceeded $1,500,000 but was less than $3,500,000, pursuant to USSG § 2B1.1(b)(1)(I);

3            c.      An increase of two points because the offense involved 10 or more

4 victims, pursuant to USSG § 2B1.1(b)(2)(A); and

5            d.      An increase of two points because the offense involved sophisticated

6 means and a substantial part of the offense was committed from outside the United

7 States, pursuant to USSG § 2B1.1(b)(10)

8            e.      An increase of two points because the offense involved benefits

9 authorized under a presidentially-declared major disaster or emergency, pursuant to

10 USSG § 2B1.1(b)(12).

11      The guideline sentence for defendant's conviction on Count 11 is a period of

12 imprisonment of 24 months, pursuant to USSG § 2B1.6 and 18 U.S.C. § 1028A.

13      The parties agree they are free to present arguments regarding the applicability of

14 all other provisions of the United States Sentencing Guidelines.  Defendant understands,

15 however, that at the time of sentencing, the Court is free to reject these stipulated

16 adjustments, and is further free to apply additional downward or upward adjustments in

17 determining Defendant's Sentencing Guidelines range.

18      10.   **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes

19 Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant

20 to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will

21 make the motion necessary to permit the Court to decrease the total offense level by three

22 (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the

23 United States by timely notifying the United States of Defendant's intention to plead

24 guilty, thereby permitting the United States to avoid preparing for trial and permitting the

25 Court to allocate its resources efficiently.

26      11.   **Recommendation Regarding Imprisonment**.  Pursuant to Federal Rule of

27 Criminal Procedure 11(c)(1)(B), the government agrees to recommend that the

28 appropriate term of imprisonment to be imposed by the Court at the time of sentencing is

*United States v. Rufai*, CR21-5186BHS
Plea Agreement - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a term of no more than 71 months.  Defendant understands that this is a below-guidelines sentencing recommendation, and that the government is making this recommendation because the actual loss is substantially less than the intended loss reflected in the sentencing guidelines.  Defendant is free to recommend any sentence.  Defendant understands that these recommendations are not binding on the Court, and the Court may reject the recommendation of the government and may impose any term of imprisonment up to the statutory maximum penalty authorized by law.   Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court.   Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

12.     **Restitution.**  Defendant shall make restitution in the amount of the actual loss resulting from all of the conduct described in Paragraph 8 of this Plea Agreement, with credit for any amounts already paid.

a.     The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds that the defendant is unable to make immediate restitution.

b.     Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution.  Defendant's cooperation

obligations are:  (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement provided by the United States Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the United States Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the United States Attorney's Office), and fully and truthfully answering questions during such interview; and (7) notifying the United States Attorney's Office before transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

       c.    The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).

       13.    **Forfeiture of Assets**. Defendant agrees to forfeit to the United States immediately Defendant's right, title, and interest in any and all property, real or personal, that was. in any and all property, real or personal, that constitutes or is derived from proceeds traceable to the offense of wire fraud, as charged in Count 2 of the Indictment. All such property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and includes but is not limited to a sum of money in the amount of the proceeds Defendant obtained as a result

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  of the offense, as agreed by the parties or established by the government at the time of

2  sentencing.

3      14.     **Abandonment of Contraband**.  Defendant also agrees that, if any federal

4  law enforcement agency seized any illegal contraband that was in Defendant's direct or

5  indirect control, Defendant consents to the federal administrative disposition, official use,

6  and/or destruction of that contraband.

7      15.     **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement,

8  the United States Attorney's Office for the Western District of Washington agrees not to

9  prosecute Defendant for any additional offenses known to it as of the time of this Plea

10  Agreement based upon evidence in its possession at this time, and that arise out of the

11  conduct giving rise to this investigation, and will move to dismiss the remaining counts in

12  the Indictment at the time of sentencing.  In this regard, Defendant recognizes the United

13  States has agreed not to prosecute all of the criminal charges the evidence establishes

14  were committed by Defendant solely because of the promises made by Defendant in this

15  Plea Agreement.  Defendant agrees, however, that for purposes of preparing the

16  Presentence Report, the United States Attorney's Office will provide the United States

17  Probation Office with evidence of all conduct committed by Defendant.

18      Defendant agrees that any charges to be dismissed before or at the time of

19  sentencing were substantially justified in light of the evidence available to the United

20  States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

21  with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119

22  (1997).

23      16.     **Breach, Waiver, and Post-Plea Conduct**.  Defendant agrees that, if

24  Defendant breaches this Plea Agreement, the United States may withdraw from this Plea

25  Agreement and Defendant may be prosecuted for all offenses for which the United States

26  has evidence.  Defendant agrees not to oppose any steps taken by the United States to

27  nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

28  Agreement.  Defendant also agrees that, if Defendant is in breach of this Plea Agreement,

*United States v. Rufai*, CR21-5186BHS
Plea Agreement - 13

1   Defendant has waived any objection to the re-institution of any charges that previously

2   were dismissed or any additional charges that had not been prosecuted.

3          Defendant further understands that if, after the date of this Plea Agreement,

4   Defendant should engage in illegal conduct, or conduct that violates any conditions of

5   release or the conditions of confinement (examples of which include, but are not limited

6   to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while

7   pending sentencing, and false statements to law enforcement agents, the Pretrial Services

8   Officer, Probation Officer, or Court), the United States is free under this Plea Agreement

9   to file additional charges against Defendant or to seek a sentence that takes such conduct

10  into consideration by requesting the Court to apply additional adjustments or

11  enhancements in its Sentencing Guidelines calculations in order to increase the applicable

12  advisory Guidelines range, and/or by seeking an upward departure or variance from the

13  calculated advisory Guidelines range.  Under these circumstances, the United States is

14  free to seek such adjustments, enhancements, departures, and/or variances even if

15  otherwise precluded by the terms of the Plea Agreement.

16          17.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

17  Defendant acknowledges that, by entering the guilty plea(s) required by this Plea

18  Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any

19  pretrial rulings of the Court, and any rulings of the Court made prior to entry of the

20  judgment of conviction.  Defendant further agrees that, provided the Court imposes a

21  custodial sentence that is within or below the Sentencing Guidelines range (or the

22  statutory mandatory minimum, if greater than the Guidelines range) as determined by the

23  Court at the time of sentencing, Defendant waives to the full extent of the law:

24          a.     Any right conferred by Title 18, United States Code, Section 3742,

25  to challenge, on direct appeal, the sentence imposed by the Court, including any fine,

26  restitution order, probation or supervised release conditions, or forfeiture order (if

27  applicable); and

28

1          b.     Any right to bring a collateral attack against the conviction and

2  sentence, including any restitution order imposed, except as it may relate to the

3  effectiveness of legal representation.

4          This waiver does not preclude Defendant from bringing an appropriate motion

5  pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or

6  the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

7          If Defendant breaches this Plea Agreement at any time by appealing or collaterally

8  attacking (except as to effectiveness of legal representation) the conviction or sentence in

9  any way, the United States may prosecute Defendant for any counts, including those with

10  mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

11  Agreement.

12          18.     **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into

13  this Plea Agreement freely and voluntarily, and that no threats or promises were made to

14  induce Defendant to enter a plea of guilty other than the promises contained in this Plea

15  Agreement or set forth on the record at the change of plea hearing in this matter.

16          19.     **Statute of Limitations**.  In the event this Plea Agreement is not accepted

17  by the Court for any reason, or Defendant breaches any of the terms of this Plea

18  Agreement, the statute of limitations shall be deemed to have been tolled from the date of

19  the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the

20  Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach

21  of the Plea Agreement by Defendant is discovered by the United States Attorney's

22  Office.

23          20.     **Completeness of Plea Agreement**.  The United States and Defendant

24  acknowledge that these terms constitute the entire Plea Agreement between the parties,

25  except as may be set forth on the record at the change of plea hearing in this matter.  This

26  Plea Agreement binds only the United States Attorney's Office for the Western District

27  of Washington.  It does not bind any other United States Attorney's Office or any other

28  office or agency of the United States, or any state or local prosecutor.

*United States v. Rufai*, CR21-5186BHS
Plea Agreement - 15

Dated:  May 3, 2022.

_____
ABIDEMI RUFAI
Defendant

_____
LANCE HESTER
Attorney for Defendant

_____
SETH WILKINSON
Assistant United States Attorney

_____
CINDY CHANG
Assistant United States Attorney

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970