JUDGE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>RUFAI ABIDEMI,<br>a/k/a Sandy Tong<br><br>　　　　　Defendant. | NO. CR21-5186BHS<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

## INTRODUCTION

The defense respectfully requests this Court sentence Mr. Abidemi Rufai to a total sentence of 30 months incarceration for the two counts he previously plead guilty. On January 15, 2021, Mr. Abidemi Rufai pled guilty to one count of Wire Fraud, in violation of 18 U.S.C. § 1343 and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. In his plea agreement, Mr. Rufai acknowledged the enumerated facts set forth in the plea agreement as the basis for his guilty plea, and he acknowledged his misconduct. He has further acknowledged the conduct during his interview by U.S. Probation, as memorialized in the Pre-Sentence Report. Included with this memorandum is a written acknowledgement as well. *See, Exhibit A. Abidemi Rufai Letter to The Court.* And, he will confess his wrong-

doing again before this Court at the sentencing hearing. The extremely remorseful Abidemi Rufai is now prepared for sentencing.

## **BACKGROUND INFORMATION**

Mr. Rufai is humbly before the Court to be sentenced for his criminal acts. A broad view of 44-year-old Abidemi Rufai is essential to examining the promise he presents when he is ultimately released. Mr. Rufai is a man who will immediately resume his passion of serving the youth of his community. He hopes to resume advocating for housing for the disadvantaged, and continue his immediate and extended family responsibilities, and, most importantly to this Court, he will live a life of integrity.

It will be helpful to examine Mr. Rufai's past. Mr. Rufai has spent the entirety of his time in detention reformulating a view of morality that rejects the opportunistic behavior that is in part the subject of his sentencing. Admirably, he has balanced the deep regret and shame of his criminal conduct with optimism for a future of continued service to the disadvantaged within his Nigerian community. He has reflected on his entire personal history as he has tried to make sense of the morality he subscribed to while engaged in criminal conduct. He has also factored into his future responsibilities a commitment to overcoming an unhealthy past of gambling, and a commitment to funding restitution to cover the Court's anticipated order.

The defense has chosen to include a comprehensive view of Mr. Rufai's history. It is filed as an exhibit to this memorandum, as Mitigation Package, by Karen Hucks. *See Exhibit B Mitigation Package.* The point of the narrative is two-fold: (1) to support the view that Mr. Rufai's criminal acts were something different than pure greed, but included judgment that was clouded by a near-lifetime of trauma and adverse experiences; and (2) to expose the

Court to areas in Mr. Rufai's life that the Court might attempt to benefit through a referral to prison programming and conditions for Mr. Rufai's supervised release.

Ultimately, the defense offers a close look at Mr. Rufai's past as doing so will facilitate the Court as it crafts a sentence that is sufficient, but no more than necessary, to satisfy sentencing objectives.

### Mitigation Report

Ms. Hucks comprehensive work and research compliments the information that Probation gathered for its PSI.  The mitigation report shares Mr. Rufai's life story, and factors outside his childhood and cultural control that, unfortunately, led to the conduct for which he is now being sentenced.  However, the same factors, given the reflection and remorse Mr. Rufai now has for his criminal activity, are contributing to Mr. Rufai's remarkable resilience that will lead him to a life committed to helping others once this Court's sentence is behind him.

The mitigation report addresses multiple topics, critical to the Court's consideration of a proper sentence.  Its utility is in addressing the 18 USC §3553 factors.  Its highlights include maternal abandonment amidst paternal polygamy, being sent to boarding school at the astonishingly young age of five, Adverse Childhood Experiences (ACEs) – including trauma – and related coping behavior.  It covers the destructive role a gambling addiction has played in Mr. Rufai's life and his offending.  *See, Exhibit B, Mitigation Package, Hucks*.

Mr. Rufai's home country, Nigeria, includes a culture that is caring, nurturing, and family oriented.  It is inescapable that it also is a nation ripe with corruption.  For decades, American media has referenced countless internet and phone scams originating from Nigeria. For these reasons, the mitigation material necessarily include a discussion of Nigerian

political and government leadership, corrupt practices, and the tolerance of what ordinarily would be viewed as anti-social and criminal behavior, such as the acts for which Mr. Rufai is being sentenced.  As Ms. Hucks concludes, Mr. Rufai has lived his entire life surrounded by corruption, and "[T]he lesson for young Nigerians seemed to be that corruption is a part of life and leaders' promises to clean up theft within government are usually empty." *Id.* at 10.

Finally, Ms. Hucks addresses the issues of joblessness throughout Nigeria. Axiomatic to joblessness anxiety is openness to being resourceful, regardless the morality behind it.

Important to the determination for a fruitful and ethical future is the fact that Mr. Rufai, despite a confusing youth, achieved a high level of education, including a degree at university as well as a master's degree.

Before the Court is a man who misses his young children and wife more than anything. His career in government employment focuses on developing housing for the Nigerian needy, and his personal passion is for the disadvantaged youth.  His resilience has him ready to serve his community, with optimism for being able to productively spend any time for which he is sentenced on his personal growth.

**PRESENTENCE INVESTIGATION REPORT**

The defense previously reviewed and objected to portions of the draft version of this report.  Those objections are noted by the report's author.

During the time of making objections and suggested corrections, the government raised the issue that the PSI now addresses, related to the section addressing "Adjustment for Obstruction of Justice." *See, PSI* at 7-8. (¶32-¶37).  Mr. Rufai represents that he has done his best to be candid about his assets when questioned.  He stands behind the written

Defendant's Sentencing Memorandum - 4

HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON  98405
(253) 272-2157

representation he made contributing to probation's material gathered in this case. He has been questioned about assets and accounts during times when he is disadvantaged – during times while in custody and without ready access to specific information.

Upon reflection, Mr. Rufai has expressed confusion whether he should report to the Court the *possible* additional assets of seized jewelry. After his arrest, the marshal's office made the belongings (luggage, etc.) he had with him available for a friend to pick up from its office at the JFK International Airport in New York. However, Mr. Rufai was told by the friend who picked up his luggage that a valuable watch and gold chain were not among the items returned. If these items are held as property, he hopes that they will be useful toward his restitution and offers to voluntarily relinquish any claim to them.

## **SENTENCING RECOMMENDATIO BY DEFENDANT**

The defense recommends the Court sentence Mr. Rufai to a total sentence of 30 months. Specific to his offenses, the recommendation is the Court sentence Mr. Rufai to 24 months for the Aggravated Identity Theft charge and consecutive to that, six more months for the Wire Fraud count.

It appears probation's sentencing calculation is consistent with the defense calculation. The parties previously represented agreement to the Guidelines calculation in the guilty plea paperwork.

The defense asks this Court to weigh more heavily the factors from 18 U.S.C. § 3553(a) than the United States Sentencing Guidelines calculation in Mr. Rufai's case. The convictions alone will impose difficulty for Mr. Rufai's ability to move forward in positions of trust and to regain the type of employment he previously enjoyed.

HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

When contemplating the § 3553 factors, the Court is asked to examine Mr. Rufai's Adverse Childhood Experiences (ACES) factors, as it is clear these contributed to the reasons Mr. Rufai is before this Court at this time. Cultural and familial issues, as well as a gambling addiction, contributed as well. In short, as will be seen throughout the balance of this briefing, the Court is asked to craft a sentence that punishes, with a duration that is sufficient, but no more than necessary, to satisfy the Court's sentencing objectives, but also potentially puts the Court in position of assisting Mr. Rufai in overcoming issues from his past, usher him into a future that continues his role assisting his community and contributing to his family and properly fathering his children and begin paying restitution.

## Guidelines Calculation

The defense calculation applying the United States Sentencing Guidelines calculations appears to be the same as what probation has advanced to this Court. In brief, that calculation is as follows:

| | |
|---|---|
| Base Level (USSG §2B1.1) | 7 |
| Loss Amount (Specific Offense Characteristics USSG 2B1.4(b)(1)(I)) | +16 |
| Multiple Victims (USSG §2B1.4(b)(2)(A)) – more than 10 victims | +2 |
| Sophisticated Means (USSG §2B1.1(b)(10)) | +2 |
| Disaster or Emergency Relief benefits (USSG §2B1.1(b)(12)) | +2 |
| Acceptance of Responsibility | -3 |
| **Total Offense Level** | **26** |

As the Court is well-aware, sentencing courts are free to disagree with the Guidelines' recommended sentence in any case and may impose a different sentence based on a contrary view of what is appropriate under §3553(a).

## THE COURT SHOULD SENTENCE MR. RUFAI TO SERVE 30 MONTHS CONFINEMENT.

Mr. Rufai urges the Court to sentence him to 30 months confinement. A 30-month sentence satisfies the 18 USC§ 3553(a) factors and is appropriate for this case. A sentence of this duration considers Mr. Rufai's offense conduct, punishes him sufficiently, and facilitates the opportunity to return him to a position in society where he can attempt to continue gainful employment, to show he's learned from his flawed thinking, and to move on with a new holistic outlook, one devoid of compartmentalized thinking that justifies opportunism and theft, with skills that will include decisions that are not clouded by his substantial trauma.

The statutory factors are set forth within 18 U.S.C. § 3553(a):

> (a) Factors to be Considered in Imposing a Sentence.
>
> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of the subsection. The court, in determining the particular sentence to be imposed, shall consider
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or

>   vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   ...
>
>   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>   (7) the need to provide restitution to any victims of the offense.

The defense's recommendation is sound upon consideration of the § 3553(a) factors, as follows:

> *A. The Nature & Circumstances of the Offense and the History and Characteristics of the Defendant.*

The offense conduct is adequately addressed in the PSI. The history and characteristics of Mr. Rufai has been summarized above, and discussed in depth in the Mitigation materials. *See, Exhibit B*. Further evidence of Mr. Rufai's characteristics should be noted in the letters that are filed herewith. *See Exhibit C, Letters in Support and Photos*. A handful of family photos and photos of Mr. Rufai fulfilling his passion, helping children through his foundation, are included as well.

The leading characteristics summarizing Mr. Rufai as he stands before the Court are regret and loss. He regrets his greedy and selfish behavior. He regrets that between gambling and spending money, he has not been in a financial position to advance restitution prior to sentencing. He regrets anything he did that may have deprived others of the resources he misappropriated. He regrets conduct that has deprived himself of a year and a half of time with his young children, and leaving his wife to solely manage them. He feels shame for being unable to assist his mother with the parts of her business he has always volunteered to

complete. He feels shame for the media's attention to his charges. He has lost an important government job – a job where he helped disadvantaged families attain occupancy in homes. He has lost precious time with his young children and wife.

Given Mr. Rufai's extensive exposure to an entire childhood exposed to untreated trauma, living in a violent and corrupt society, and raised during a time of extensive governmental and leadership corruption in his native country, it was inevitable he would face situations in which clarity of judgment would be clouded, and his otherwise altruistic persona compartmentalized his criminal behavior.

### B. The Seriousness of the Offense, the Need to Promote Respect for the Law and the Need to Provide Just Punishment.

The defense agrees a term of incarceration is appropriate to satisfy the Court's objectives for just punishment. As mentioned, that amount is 30 months. Wire Fraud and Identity Theft were offense opportunities Mr. Rufai pursued without full appreciation for the consequences. Before his arrest, Mr. Rufai had never stepped foot in Washington State. He has no friends nor family anywhere nearby. He was ill while incarcerated, contracting the COVID-19 virus a remarkable four times. He endured the marshal's transport from New York City to Washington state over several weeks. He has seen himself on the news, and read about himself in news publications. The US Attorney's Office has published press releases in his case. Promoting respect for the law has been accomplished. Mr. Rufai is ashamed. The time he has spent incarcerated has already served as just punishment.

### C. The Need to Afford Adequate Deterrence.

Arguably there is nothing more the Court can do to deter Mr. Rufai from similar criminal conduct. Daily, he has regretted his actions, and spent lots of time experiencing the anxiety that accompanies awaiting judgment from a court. He has expressed the

consequences his actions may have caused others. The sustained separation from his family has been agonizing. Mr. Rufai's name has brought shame to the Governor's office where he was previously and proudly employed.

For whatever duration the Court sentences Mr. Rufai, he is looking forward to taking advantage of all programming available to him within the institution. As the Court is well-aware, 2018 legislation, the First Step Act, provides curriculum and hours for those incarcerated for Federal sentences to engage in educational opportunities designed to address the very subject of deterrence. Having examined his flawed decision-making and thinking related to his offenses, Mr. Rufai knows he will benefit from the programs he is eligible to participate in.

### D. The Need to Protect the Public.

There are conditions the Court can place on Mr. Rufai that will protect the public from future similar harm. For example, the Court can prohibit Mr. Rufai from holding a position of financial trust in his future occupations.

### E. The Need to Provide the Defendant with Education or Vocational Training or Rehabilitation.

Unfortunately, there is not a gambling program similar to the RDAP program available for those defendants with substance abuse issues. However, the First Step Act appears to offer a gambling addiction program in Bureau of Prison institutions. While it does not appear mandatory for the Court to recommend or refer Mr. Rufai to this programming, the defense requests such a recommendation in the event the BOP assessment process includes a review of the Court's sentencing order. This issue can be addressed in the Court's conditions for supervised release as well. Mr. Rufai's enthusiasm to participate in all pro-

social programming available in the prison setting is referenced in the above section and applies here as well.

### F. The Need to Avoid Disproportionality Among Defendants with Similar Records who have been Found Guilty of Similar Conduct.

Overall, Wire Fraud and Identify Theft cases are difficult for making comparisons. The defense has spent considerable time researching sentencing results for financial crimes based on dollar amounts. The only thing that is clear is that sentencing results vary widely, making the loss amount and the restitution amount a metric that is not as meaningful as one might expect.

The defense is directly familiar two recent sentencings in the Western District of Washington. A Seattle WAWD case, *USA v. Brenda Campbell*, CR21-003RSM, the Court sentenced the defendant to 20 months on a wire fraud count, with $607,133.22 restitution order. A Tacoma case, *USA v. Cova Campbell*, CR20-5065RJB, the defendant was sentenced to 51 months after misappropriating nearly $7 million from the Pierce County Housing Authority.

Cases defended by different defense attorneys locally and in other jurisdictions have been examined as well. The following is not an exhaustive list, but a series of cases the defense has found helpful in determining the appropriate sentence to request of the Court in Mr. Rufai's case.

In August of 2021, Mokund Mohan was sentenced to two years in prison for a fraud involving COVID-19 disaster relief resources. The case involved a $5.5 million attempted loss, and resulted in a restitution order in the amount of $1,786,357.00. *See, Exhibit D, Press Releases.* In March of 2022, after trial, and apparently lying on the stand in the Seattle WAWD court, Eric Shibley was sentenced to 4 years in prison and ordered to pay $1,438,000

Defendant's Sentencing Memorandum - 11

HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

in restitution. *Id.* Last month, Austin Hsu was sentenced to two years in prison for his fraudulent efforts obtaining over $709,104.97 of COVID-19 relief funds. *Id.* A Federal Court in the District of Oregon sentence Benjamin Tifekchian to 21 months in prison and ordered $910,000 in restitution for his scheme to defraud the government of COVID-19 relief CARES Act funds. *Id.* In 2020, Iliganoa Theresa Lauofo, a Tacoma woman, was sentenced in Seattle WAWD to 27 months for a 7-year fraud scheme from fraudulently obtaining government benefits. The sentence included a restitution order of $276,639. *Id.*

On the higher end of the ranges, the defense examined was Mr. Reyes De La Cruz, III. Unlike Mr. Rufai, Mr. De La Cruz is a repeat offender, and an insider at the Employment Security Department, with somewhere around 20 crimes in his history. He was sentenced to 60 months by Judge Bryan in September 2022 for his role in $360,000 of fraud related to pandemic relief benefits. *Id.*

The crimes, the victims, and the loss amounts should not be ignored. The Court, however, should be mindful of all in the context of the § 3553 factors. The best course the Court can adopt in Mr. Rufai's case is a wholistic view of not just the offense, victims, and loss amount, but personal characteristics. As previously addressed, Mr. Rufai's personal characteristics are thoroughly addressed in both the PSI and the Mitigation Report.

G. *The Need to Make Restitution to Victims.*

Mr. Rufai's case includes substantial restitution. Mr. Rufai plans to pursue the best employment he can find following his release from custody. The best way for Mr. Rufai to make meaningful progress in fulfilling his restitution requirement will be to have as much time possible available to work for what will be a long-term commitment to fulfilling this obligation.

Mr. Rufai is before this Court upon an agreed restitution amount. The defense hopes the Court will see this part of the agreement as a significant part of his acceptance of responsibility, and will consider it as part of its assessment of the proper duration of incarceration.

## CONCLUSION

Respectfully, the defense urges that upon the Court's consideration of the Guidelines and of the § 3553 factors, a sentence of 30 months incarceration is appropriate.

Mr. Rufai requests the Court recommend his BOP placement be FCI Fort Dix, and in the alternative, placement in a facility in the Northeast Region. Placement at Fort Dix or a Northeast Region facility will increase the chances of Mr. Rufai's wife and young children visiting him in the future, as it is nearest a major airport that services Lagos, Nigeria directly. He also has family members who live in New York City and Maryland who have indicated their interest in visits once he is sentenced.

RESPECTFULLY SUBMITTED this 19th day of September, 2022.

HESTER LAW GROUP, INC., P.S.
Attorneys for Defendant

By:    _/s/ Lance M. Hester_
      LANCE M. HESTER
      WSB #27813

## CERTIFICATE OF SERVICE

Lee Ann Mathews, hereby certifies under penalty of perjury under the laws of the State of Washington, that on the date set forth below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the plaintiff and co-defendants, if any, and hereby certify that I have mailed the document by U.S. Postal Service to Rufai Abidemi, defendant.

Signed at Tacoma, Washington this 19th day of September, 2022.

_/s/ Lee Ann Mathews_
LEE ANN MATHEWS