The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff<br><br>      v.<br><br>ABIDEMI RUFAI,<br><br>  Defendant. | NO. CR21-5186-BHS<br><br>UNITED STATES' SENTENCING MEMORANDUM |

Abidemi Rufai is a Nigerian state official who stole over $500,000 in relief funds that should have gone to support American workers and small businesses suffering from the economic impact of the COVID-19 pandemic. His exploitation of a vulnerable time in our nation was the culmination of at least five years of continuous and deliberate attempts to defraud the United States government and its residents through fraudulent tax returns using stolen identities, fraudulent disaster relief claims for Hurricanes Harvey and Irma, and a litany of scams that targeted American individuals and businesses. In total, Rufai attempted to steal nearly $2.4 million dollars from the United States government, alone.

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Rufai plainly has access to substantial capital, but he has made no effort to date to pay restitution. He was wearing a $10,000 watch and a $35,000 gold chain when he was arrested while preparing to board a business class flight from New York to Nigeria. He was known in Nigeria as a prodigious political fundraiser, and he was overheard on jail calls discussing moving large amount of money immediately following his arrest. Yet he has insisted to the government and the Probation Office that he has no assets. Rufai's plainly inaccurate statements about his financial situation and his failure the pay back the stolen money are important sentencing considerations.

The United States recommends that the Court sentence Rufai to 47 months of imprisonment for the wire fraud (Count 2) conviction, to run consecutive to the mandatory 24-month sentence for aggravated identity theft (Count 11), for a total of 71 months of imprisonment. This sentence is necessary to reflect the serious nature of the offense and to deter others from engaging in similar conduct. The Court should also impose the special conditions recommended by Probation, including that upon deportation, he may not reenter the United States without permission of the Department of Homeland Security. The Court should further order Rufai to pay restitution in the amount of $604,260.

## I. BACKGROUND

**A. Abidemi Rufai is a Prominent Member of His Community Who Lived a Life of Power and Luxury.**

Abidemi Rufai is an established community leader in Nigeria. According to his resume, beginning in 2016, Rufai was the Chairman and CEO of Payquick Gaming Company, an allegedly 350 million Naira sports betting company for which he provided "visionary leadership" and "ensure[d] all legal and regulatory documents [were] filed and

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  monitor[ed] compliance with laws and regulations." In 2019, Rufai challenged an
2  incumbent representative and ran for Nigeria's National Assembly, the federal legislative
3  branch equivalent to the United States Congress. During the course of his campaign, he
4  held himself out to be an upstanding, responsible citizen:



25  Although he did not prevail in his campaign, in August 2020, within days of Rufai's
26  return to Nigeria, after exploiting the COVID-19 pandemic in the United States for over

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

$500,000, the Governor of Ogun State (which borders Lagos State) appointed Rufai to serve as Senior Special Assistant to the Governor. Ex. A, Letter from Prince Dapo Abiodun to Rufai (Aug. 2020). In fact, Rufai has very strong ties to the governor:





Rufai even has the Governor's mobile phone number saved in his personal phone.

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In the months following Rufai's high-level appointment, as his community heartily celebrated his achievement, he graced the cover of magazines:




Prominently featured in his photo spreads was the luxury Mercedes SUV that Rufai purchased in the United States with the funds that were supposed to assist American

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

workers and businesses suffering from the devastating economic impact of the COVID-19 pandemic:



As detailed below, *see infra* IV.B.1, this is the same luxury Mercedes SUV that Rufai purchased in July 2020, while he was still in the United States and stealing pandemic assistance that should have gone to American workers and businesses suffering at the height of the pandemic.

B.  **Rufai Has Been Attempting to Defraud the United States and Its Residents and Businesses Since at Least 2017.**

As Rufai lived a life of power and luxury in Nigeria, he exploited times of disaster in the United States on at least two occasions prior to the pandemic when Hurricanes Harvey and Irma struck in 2017. PSR at ¶ 27-28. Between September and October 2017, Rufai submitted fraudulent disaster relief claims to the Federal Emergency Management

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agency using the stolen personal identifying information of 49 Texans and Floridians who lived in the affected areas. *Id*. Thirteen of these claims, totaling $6,500, were paid.

And when Rufai was not stealing disaster funds from real victims, he was attempting to defraud the United States government by filing fraudulent tax returns using the stolen personal identifying information of American taxpayers. Between 2017 and 2020, Rufai used the sandytangy58@gmail.com account to file over 675 tax returns seeking over $1.7 million in fraudulent refunds. *Id*. at ¶ 25. The IRS paid out $90,877 based on these fraudulent filings. *Id*.

Rufai's fraudulent activities did not only target the United States government. He also orchestrated a "mystery shopper" scam and instructed his co-conspirator to send "mystery shopper" letters with counterfeit checks of thousands of dollars to unknowing U.S. residents. *Id*. at ¶ 29. The letter instructs the recipient to deposit the check into their bank account, keep a nominal amount as their "commission," and then use the balance of the funds to complete their "assignment." The "assignment" directs the recipients to wire funds using money transfer businesses to specified names and addresses and then provide an "evaluation" of the services they received from the money transfer businesses. By the time the victims discover the checks are counterfeit and returned, the wires have been completed and the victim has lost thousands of dollars. *Id*.

Rufai also targeted American businesses through business email compromise scams. *Id*. at ¶ 30. These scams target payroll departments of companies by spoofing the sender's email to appear to be an employee of the company. The scammer then directs the payroll department to change the employee's direct deposit to an account that the scammer controls. *Id*.

Among the items found in Rufai's sandytangy58@gmail.com account were the personal identifying information, including dates of births and social security numbers, of over 20,000 unwitting Americans and spreadsheets that contained the names, titles, and

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

contact information for thousands of business personnel in the United States. Dkt. 42 at ¶ 8.b; PSR at ¶ 30.

### C. Rufai Stole Funds Intended for American Workers and Small Businesses Suffering from the Economic Impact of the COVID-19 Pandemic.

Rufai's prolific perpetration of fraud against the United States and its residents and businesses culminated at the onset of the COVID-19 pandemic. In March 2020, following presidential declarations of a nationwide emergency and major disasters in every state, the federal government enacted measures to mitigate the devasting economic impact the COVID-19 pandemic was exacting on American workers and businesses. PSR at ¶ 15-16. Among these measures was federal funding for expanded and increased unemployment benefits administered by state workforce agencies, including the Washington Employment Security Department (ESD). *Id.* at ¶ 16-17.

Between April and October 2020, Rufai used his cache of stolen identities to submit at least 224 fraudulent claims for pandemic benefits in the names of at least 224 American workers to at least nine state workforce agencies across the country, including ESD. *Id.* at ¶ 23; Ex. B, Dec. of Special Agent Andrea L. DeSanto (Sept. 3, 2022), at ¶ 10.; Dkt. 42, Plea Agreement, at ¶ 8.g. Rufai used the Gmail account sandytangy58@gmail.com and 16 other Gmail accounts to submit the claims. PSR at ¶ 23; Ex. B at ¶ 10. To prevent state workforce agencies from recognizing that single email accounts were being used to submit multiple claims, Rufai inserted periods at various places in the email addresses. PSR at ¶ 23.

When filing the fraudulent claims, Rufai sometimes requested that the funds be paid to accounts under his control (typically Green Dot Bank accounts), or under the control of persons known as "money mules," who were duped into mailing the money to Rufai. In at least one instance, an unwitting money mule was an elderly woman in Missouri. In other cases, the benefits were loaded onto debit cards, which Rufai then used to withdraw the funds. *Id*. at ¶ 24. Based on the Declaration of Special Agent Andrea DeSanto, the parties agree that state workforce agencies paid out at least

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

$604,260 as a result of Rufai's fraudulent submissions. *See* Dkt. 42 at ¶ 8.i; Ex. B at ¶ 10.

Rufai also filed fraudulent claims for pandemic-related business loans. In response to the catastrophic economic impact of the pandemic, Congress also authorized the Small Business Administration to provide loans known as Economic Injury Disaster Loans (EIDLs) of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. PSR at ¶ 26. The EIDL program included advance grants of $10,000 that were disbursed quickly and automatically forgiven. Between April and June 2020, Rufai submitted at least 19 fraudulent EIDL applications. Fortunately, SBA denied most of the applications, but Rufai received at least one $10,000 advance grant. *Id.*

## II.   PROCEDURAL HISTORY

On May 14, 2021, an Amended Complaint charged Rufai with five counts of wire fraud, in violation of 18 US.C. §§ 1343 and 2. Dkt. 3. The next day, agents arrested Rufai in the Eastern District of New York, as he was preparing to board a business class flight from JFK International Airport to Nigeria.

On May 26, 2021, the Grand Jury returned a 15-count indictment, charging Rufai with conspiracy (Count 1), in violation of 18 U.S.C. § 1349; wire fraud in connection with a presidentially declared emergency or major disaster (Counts 2-10), in violation of 18 U.S.C. §§ 1343 and 2; and aggravated identity theft (Counts 11-15), in violation of 18 U.S.C. § 1028A. Dkt. 10.

On May 3, 2022, the defendant pled guilty to Counts 2 (wire fraud) and 11 (aggravated identity theft). Dkt. 41.

## III.   SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the Probation Office on the Sentencing Guidelines calculations and has no objections to the facts contained in the PSR.

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The following calculation applies for Count 2 (wire fraud):

| Item | Guideline | Adjustment |
|---|---|---|
| Base Offense | 2B1.1(a)(1) | +7 |
| Intended Loss in Excess of $250,000 | 2B1.1(b)(1)(I) | +16 |
| 10 or More Victims | 2B1.1(b)(2) | +2 |
| Sophisticated Means | 2B1.1(b)(10) | +2 |
| Disaster Benefits | 2B1.1(b)(12) | +2 |
| Acceptance | 3E1.1 | -3 |
| **Total** | | **26** |

*See* PSR at ¶¶ 41-53.

For Count 11 (aggravated identity theft), the Guideline range is the minimum required by statute, two years, which must run consecutive to Count 2. USSG § 2B1.6.

The defendant's criminal history category is I. PSR at ¶ 56. The resulting Guidelines range is 63 to 78 months for Count 2 (wire fraud) and a mandatory consecutive sentence of 24 months imprisonment for Count 11 (aggravated identity theft).

## IV.   SENTENCING RECOMMENDATION

The United States recommends that the Court impose a total term of imprisonment of 71 months.

For the reasons set forth below, this recommendation is appropriate given "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to ensure adequate general deterrence, and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C).

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### A. The Nature and Circumstances of the Offense—Rufai's Exploitation of Three Disaster Periods in the United States is an Aggravating Factor.

Because two years have lapsed since Rufai committed the COVID-19 pandemic offenses, it is easy to forget the chaotic, desperate, and dire circumstances facing our nation and our government's attempts to stem the catastrophic economic impact of the first six months of the COVID-19 pandemic. And because Rufai entered the United States on February 18, 2020, and did not depart the country until August 9, 2020, he experienced firsthand the onset of the pandemic in the United States and the immediate aftermath of schools, businesses, and restaurants shuttering, while hospitals—particularly the hospitals in New York, the epicenter of the crisis, where he was staying with his brother—were overwhelmed with patients dying of COVID-19.[1] Yet, Rufai saw the pandemic and its consequences not as a public health catastrophe but as an opportunity to further enrich himself through fraud.

As Rufai began executing his scheme to use stolen identities of American workers to file fraudulent unemployment claims in April 2020, approximately 20.6 million American were unemployed, far surpassing the Great Recession's peak of 15.2 million in 2009.[2] When he filed fraudulent EIDL applications intended to assist small businesses, American business owners saw their livelihoods vanish overnight. In fact, a survey in April 2020 showed that 43 percent of small businesses in the nation had at least temporarily closed, which was unprecedented in our nation's history and a far more severe economic impact than the 1918 influenza.[3]

---

[1] *See, e.g.,* Ariana Cha, "Faced with a crush of patients, besieged NYC hospitals struggle with life-or-death decisions," *The Washington Post* (Mar. 31, 2020), *available at* https://www.washingtonpost.com/health/2020/03/31/new-york-city-hospitals-coronavirus/.

[2] U.S. Bureau of Labor Statistics, "Unemployment Rises in 2020, as the country battles the COVID-19 pandemic" (June 2021), *available at* https://www.bls.gov/opub/mlr/2021/article/unemployment-rises-in-2020-as-the-country-battles-the-covid-19-pandemic.htm.

[3] Alexander Bartik, et al., "How Are Small Businesses Adjusting to COVID-19? Early Evidence From a Survey," *Nat'l Bureau of Economic Research* (Apr. 2020), at 3, 8, *available at* https://www.nber.org/system/files/working_papers/w26989/w26989.pdf.

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Moreover, Rufai exploited not one but *three* disaster periods in the United States—the COVID-19 pandemic, Hurricane Irma, and Hurricane Harvey. During major disasters and nationwide emergencies, it is particularly important for the government to be able to disburse aid quickly to real victims to mitigate the impact of the crisis. The actual monetary loss to the government comes secondary to the fact that a real person or business behind each stolen identity had difficulty accessing assistance because a fraudulent claim was already paid in their identity. *See* PSR at ¶ 31. In this case, Rufai successfully used the stolen identities of at least 238 real individuals who qualified for disaster aid and may have needed it urgently. This number does not account for the number of stolen identities Rufai attempted to use but failed. But just one of his email accounts alone contained the stolen personal identifying information, including dates of birth and social security numbers, of more than 20,000 unwitting Americans. PSR at ¶ 13.

Rufai's attempted exploitation of the EIDL program from April until June 2020 particularly victimized American small businesses, as funding for the grant program was exhausted by July 2020. While it is true that Rufai was only successful in obtaining one $10,000 grant payment, he attempted to steal at least 18 more and the program funding's exhaustion meant that every single fraudulent payment deprived a legitimate small business owner of assistance when they needed it the most.

Notably, both Congress and the Sentencing Commission have endorsed sentencing enhancements during national emergencies and major disasters. *See* 18 U.S.C 1343 (increases maximum penalties to 30 years imprisonment and $1 million fine); USSG § 2B1.1(b)(2)(12) (two-level increase applied for offenses involving disaster fraud). Congress enacted the enhanced statutory penalty for wire (and mail) fraud in response to reports of widespread fraud and abuse in connection to disaster funds disbursed for Hurricanes Katrina and Rita. The Senate Judiciary Committee report noted:

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> We want to help ensure that federal money goes to the right people and does not get stolen by criminals posing as victims. Congress wants to provide appropriate recovery and relief resources to affected States, and also ensure that these resources are protected and distributed only to the real victims–not to individuals seeking to take advantage of the disaster.

Senate Report No. 110-69, 110th Cong., 1st Session (May 22, 2007).

In this case, there are no circumstances under which Rufai—a Nigerian state official—was a real victim. Rather, he was a criminal seeking to take advantage of our nation's disasters.

### B. Defendant's History and Characteristics

#### 1. Rufai's Dissipation of Fraudulent Proceeds and Continued Obstruction Regarding His Financial Assets Are Aggravating Factors.

It is difficult to decipher the true nature of Rufai's financial assets, but what is certain is this—it is not what Rufai has represented to Pretrial Services, Probation, the government, or even his counsel. It is also certain that Rufai immediately orchestrated the dissipation of his fraudulent proceeds after being arrested at JFK. His continued obstruction of his financial assets is an aggravating factor for his sentencing.

The Nigerian Economic Financial Crimes Commission (EFCC) is the country's law enforcement agency responsible for investigating financial crimes. Last year, the agency identified the assets in paragraph 90 of the PSR, including two homes and two bank accounts, including a Sterling Bank account (number ending in -1989) for Omo Mayodele Global Investment, Ltd. with a balance of approximately 78 million Naira (approximately $180,000). Rufai failed to disclose this account to the government in his financial disclosure and when confronted with this information, claimed that Omo Mayodele Global Investment belongs to his mother despite the fact that he lists himself as the "Chief Executive Officer" for the entity on his resume. *See* Ex. C, U.S. Dep't of Justice, Financial Statement of Debtor (Abidemi Rufai) (signed June 16, 2021); PSR at ¶ 91.

In reality, evidence suggests that Omo Mayodele Global Investment is a shell company Rufai used to launder illicit proceeds. In documents found on Rufai's personal

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

cell phone seized incident to arrest, a certificate of incorporation and related corporate filings show that the entity was incorporated in 2010, and Rufai holds a 90 percent interest in the company, with his mother holding the remaining 10 percent.  Ex. D, Omo Mayodele Global Investment Corporate Documents, at 5.  Tellingly, on March 25, 2020, while Rufai was in New York and executing his scheme to defraud the United States of pandemic aid, he sent a letter to Guaranty Trust Bank (GT Bank) to "re-activate" a dormant account in the entity's name with an urgent request that this reactivation is done "as soon as possible."  Ex. E at 1.  EFCC public findings indicate that between March and May of 2020, bank accounts associated with Rufai received unusually large deposits and withdrawals that neither occurred before nor after that time period.  Ex. F, "Court orders interim forfeiture of Abidemi Rufai's homes, bank accounts," *Premium Times* (Aug. 31, 2021), *available at* https://www.premiumtimesng.com/news/top-news/482330-court-orders-interim-forfeiture-of-abidemi-rufais-homes-bank-accounts.html.

    This evidence of sophisticated money laundering is consistent with Rufai's conduct immediately upon his arrest when he directed his associates (with whom he is still in contact) to dissipate the fraudulent proceeds.  Specifically, on May 27, 2021, three days after his brother refused to act as his surety for a $300,000 appearance bond, Rufai instructed his associates to transfer all assets to another associate, "Apopo," and to relocate his vehicles, which his associate confirmed had already been done.  He further identified another associate, "Yomi Kankanfo," who has custody of a portion of his cash assets.  Ex. G, Summary Translations of EDNY Jail Calls.  A day earlier, Rufai noted that it was wise to use his mother's name on property that could be used as collateral.  *Id.*

    Rufai's prompt dissipation of assets is also consistent with his admission that his wife sold the luxury Mercedes SUV that he purchased for $71,620 in or about July 2020 while he was in the United States.  *See* Addendum to PSR, Defense Response to Objection 1.  The timing and manner in which Rufai paid for the vehicle ($10,000 cash and various checks) show that Rufai used the pandemic aid he stole to purchase the luxury vehicle and then ship it to Nigeria.  *See* Ex. H, Mercedes SUV Documents.

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Finally, Rufai's representation to the government that he only has $19,000 in assets is simply not credible. At the time of his arrest, Rufai had a designer Cartier watch on his wrist and was carrying two Apple and one Samsung smartphone on his body. He was about to board a business class flight to Nigeria, which typically costs $3,000 to $5,000. Weeks later, on May 25, 2021, the day after his brother declined to serve as a surety for the $300,000 appearance bond imposed by the Eastern District of New York, Rufai assured his brother that he can pay whatever it takes for him to be released from detention in EDNY and flee to Nigeria. Ex. I, Transcript of EDNY Jail Calls.

It is difficult for the government to independently ascertain Rufai's assets with the false employment information Rufai provided Pretrial Services and Probation. In May 2021, Rufai told Eastern District of New York's Pretrial Services that he is a realtor at Acon Limited and that he had worked there for 12 years, earning $135,000 per year. PSR at ¶ 84. He then attempted to correct his statement to Probation by stating that he only worked at Acon Limited for one year. *Id*. Rufai is a highly-educated and sophisticated fraudster; Rufai's assertion that Pretrial Services misunderstood him is not credible. Tellingly, when asked to verify the employment information Rufai provided Pretrial Services, Rufai's own brother stated that he could verify Rufai was employed in Nigeria but did not know any details.

The fact is, Rufai's employment history is difficult to follow and his financial assets are obfuscated because it appears that his primary source of income—despite having a master's degree and powerful political connections—has long been stolen funds from the United States government and its residents and businesses.

> **2. Rufai's Continued Efforts to Undermine the United States' Judicial System is an Aggravating Factor.**

In order to monitor inmate calls for illegal activity and other abuses, BOP assigns each inmate a distinct phone account that he is required to use when making calls. On March 15, 2022, at FDC SeaTac, Rufai violated this policy by using the telephone account of another inmate to deliberately evade monitoring. Rufai spoke in Yoruba with

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

his associate "Jackson," and a summary translation of the nearly six-minute call is as follows:

> Abidemi tells Jackson that he could not talk when they had conversation the other time, so Abidemi asked somebody else to call Jackson, adding that this call, is not on Abidemi's account. Abidemi tells Jackson to tell Apopo not to go, adding that Apopo and Jibola are supposed to travel tomorrow. Abidemi says he has sent a message to Apopo through Ronke. Abidemi tells Jackson that when the affidavit was received, Apopo's name was mentioned. Jackson said Apopo is going to Turkey for tiles, Abidemi tells Jackson that Apopo is safe in Turkey because America cannot have anybody extradited from Turkey, like they could, if it were London.

Ex. J, Summary Translations of FDC SeaTac Calls, at 6. Although the details of what Rufai is conveying to Jackson are not evident, what is clear is that: (1) Rufai did not want the contents of this call to be known; and (2) Rufai urgently tipped-off his associates that federal law enforcement are aware of Apopo's identity and advised that he should not travel to an extraditable country, presumably because he has violated the laws of the United States. Accordingly, it appears that any remorse Rufai claims to have about his crimes did not deter him from facilitating the evasion of an associate who appears to be a co-conspirator.

### 3. Rufai's Prominent Position in His Community and Luxurious Lifestyle Are Aggravating Factors.

As detailed above, *see supra* I.A., Rufai is a Nigerian state official with powerful political connections who lived a life of luxury using funds he stole from the United States and its residents and businesses. Any contrition Rufai expresses to the Court should be metered by the fact that he told his associates that this case is not a big deal because it involves "so little money" and is simply "overblown" because he is in politics. *See* Ex. J, at 2. Rufai fails to recognize that the severity of his crimes is not measured merely by the amount he successfully stole, *see supra* IV.A., and his prominence in his community means that he is both an ambassador and role model for those in his

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

community and abroad. His influence in his community and luxurious lifestyle are aggravating factors for his sentence.

### C. A Substantial Term of Imprisonment is Necessary to Deter and is Just Punishment for the Offense.

The impact the sentence in this case has on general deterrence cannot be overstated. Due to Rufai's prominence as a Nigerian state official, this case has received widespread international, national, and local attention. *See, e.g.,* Ex. K, "Abidemi Rufai: Ogun state Dapo Abiodun government react as FBI arrest aide for alleged wire fraud of more dan $350,000," *BBC News Pidgin* (May 18, 2021), *available at* https://www.bbc.com/pidgin/tori-57154227; Ex. L, "U.S. court orders Governor Abiodun's moneybag Bidemi Rufai to pay $604,260, forfeit assets," *People's Gazette* (Sept. 19, 2022), *available at* https://gazettengr.com/u-s-court-orders-governor-abioduns-moneybag-bidemi-rufai-to-pay-604260-forfeit-assets/.

It is public knowledge that the Department of Justice is continuing to investigate and prosecute those who defrauded the United States during the COVID-19 pandemic. The web browser history of multiple targets abroad indicate that those who committed the same crimes as Rufai are also following the outcome of this case. Even more telling is that these same targets have attempted to destroy evidence highlighted in the Complaint and Indictment against the defendant. When those criminals read the sentence imposed on the defendant, it must be substantial enough to deter them from further illegal activity and underscore that they are not beyond the reach of the United States judicial system.

Moreover, because it is not a secret that extraterritorial monetary judgments are difficult to enforce and Probation will not be able to monitor Rufai's behavior after deportation, a significant term of imprisonment may be the only assured punishment available to hold Rufai accountable for repeatedly exploiting times of crisis in the United States to fund his life of luxury and power in Nigeria.

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D. A 71-Month Term of Imprisonment Would Be Consistent With Sentences Imposed for Similar Conduct.

On September 16, 2022, the Honorable Robert J. Bryan sentenced Reyes De La Cruz, III (CR21-5336-RJB) to 60 months of imprisonment for defrauding ESD of approximately $360,000. Although De La Cruz was an insider with a history of state convictions, he is also a veteran of the Marine Corps who served for seven years, was deployed overseas, and suffers from post-traumatic stress disorder and other trauma as a result of his service to our country. De La Cruz, who was raised and lived in Moses Lake, lived a life of poverty and abuse nearly his entire life and much of his criminal conduct occurred while he was also heavily addicted to alcohol and narcotics. De La Cruz also readily accepted responsibility for his criminal conduct and was truthful in every statement he gave to the government. These distinctions in the defendants' history and characteristics and conduct after arrest warrant a more significant sentence for Rufai.

## IV. CONCLUSION

The Court should sentence Rufai to 71 months of imprisonment and the special conditions recommended by Probation, including, upon deportation, prohibiting reentry into the United States without the permission of the Department of Homeland Security. The Court should further order restitution in the amount of $604,260.

Dated: September 19, 2022

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Cindy Chang*
CINDY CHANG
SETH WILKINSON
Assistant United States Attorneys
700 Stewart Street, Ste 5220
Seattle, WA 98101
Telephone: (206) 553-7970
Fax: (206) 553-0582
Email: Cindy.Chang@udsoj.gov

United States' Sentencing Memorandum
*United States v. Rufai* / CR21-5186-BHS - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970